[No. S061678. May 14, 1998.]

THE PEOPLE, Plaintiff and Respondent, v.
RUSSELL DONALD BENSON, Defendant and Appellant.

**COUNSEL**

Russell S. Babcock, under appointment by the Supreme Court, for Defendant and Appellant.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Carol Wendelin Pollack, Assistant Attorney General, William T. Harter, Pamela C. Hamanaka and Ellen Birnbaum Kehr, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**GEORGE, C. J.**—In 1994, the Legislature, and thereafter the electorate, enacted similar "Three Strikes" laws. (See Pen. Code, §§ 667, subds. (b)-(i), 1170.12.)[1] Under these provisions, a defendant who has one qualifying prior conviction, or "strike," may receive a lengthier sentence than would have been possible without that strike, and a defendant with two strikes may receive an even lengthier sentence. (See *People* v. *Superior Court* (*Romero*) (1996) 13 Cal.4th 497, 504-506 [53 Cal.Rptr.2d 789, 917 P.2d 628] (*Romero*).) In the present case, defendant has two prior felony convictions— (1) residential burglary, and (2) assault with intent to commit murder— sustained in one action and arising out of the same set of facts. The trial court in the earlier action imposed sentence for one of those convictions, but stayed the sentence on the other under Penal Code section 654, which prohibits multiple punishment under certain circumstances.[2] (See generally, *People* v. *Latimer* (1993) 5 Cal.4th 1203 [23 Cal.Rptr.2d 144, 858 P.2d 611].) Each conviction individually would qualify as a strike. The question before us is whether defendant has one strike or two.

We conclude that the plain language, legislative history, and legislative purpose of the Three Strikes law compel the conclusion that when a court has stayed sentence on an otherwise qualifying conviction under section 654, the stayed conviction may be treated as a strike. Accordingly, we conclude

---

[1] On November 8, 1994, prior to the commission of the crimes committed in this case, the voters approved Proposition 184, which added section 1170.12 to the Penal Code. Although the legislative version of the Three Strikes law, codified at Penal Code section 667, subdivisions (b)-(i), and the electoral version differ in minor respects, the issue presented in the present case is common to both versions. (*People* v. *Fuhrman* (1997) 16 Cal.4th 930, 932, fn. 2 [67 Cal.Rptr.2d 1, 941 P.2d 1189]; *People* v. *Hazelton* (1996) 14 Cal.4th 101, 108 [58 Cal.Rptr.2d 443, 926 P.2d 423].) For ease of reference, we shall cite the initiative version, which was in effect when defendant committed the crime in the present case, also noting where appropriate the similar provisions in the legislative version of the statute.

[2] Unless otherwise specified, all further statutory references are to the Penal Code.

that defendant has two strikes, not one. We therefore affirm the judgment of the Court of Appeal, which found that defendant has two strikes.

## I.

On November 30, 1994, defendant was arrested for shoplifting a carton of cigarettes worth $20 from a Target store. He subsequently was convicted by a jury of petty theft with a prior. (§ 666.) Two prior strikes were found true. Defendant was sentenced to state prison for 25 years to life.

Defendant's prior strikes are based upon an incident that occurred in 1979. According to the probation officer's report, defendant resided in the same apartment building as the victim. He went to her apartment to borrow her vacuum cleaner. After returning the vacuum cleaner a short time later, he returned again to her apartment, stating that he had left his keys there. Once inside the victim's residence, defendant grabbed her from behind and struggled with her, forcing her to the floor and displaying a knife. He thereafter stabbed her approximately 20 times over most of her body. The victim was able to provide law enforcement officers with the identity of her assailant. The officers located the knife and the bloody clothing at defendant's apartment. The following day, defendant turned himself in to the police and was placed under arrest. As a result of the attack, the victim underwent four major surgeries and was severely scarred.

Based upon the foregoing incident, defendant was convicted by a jury in 1980 of residential burglary (§ 459) and assault with the intent to commit murder (former § 217, repealed by Stats. 1980, ch. 300, § 2, p. 628, eff. Jan. 1, 1981; see now, generally, § 664). He was found to have used a knife (§ 12022, subd. (b)) and to have inflicted great bodily injury (§ 12022.7) in the commission of those offenses. The trial court entered a judgment of conviction against defendant for the crime of residential burglary and the crime of assault with intent to commit murder.[3] The record reflects that the sentence on the assault conviction was stayed.[4]

---

[3]Residential burglary is a serious felony, and assault with intent to commit murder is both a serious and a violent felony. (§§ 667.5, subd. (c)(8) & (12), 1192.7, subd. (c)(8), (9), (18) & (23).) Each one of these crimes is a qualifying prior felony conviction for purposes of the Three Strikes law.

[4]The abstract of judgment from defendant's 1980 conviction indicates that his conviction of assault with intent to commit murder was "stayed," without referring to section 654. Both parties assumed the stay was imposed pursuant to section 654, however, and the Court of Appeal concluded that assumption was reasonable in view of defendant's testimony and the police and probation reports that indicated the two convictions stemmed from a single incident. (See *People* v. *Latimer, supra,* 5 Cal.4th 1203, 1206-1208; *Neal* v. *State of California* (1960) 55 Cal.2d 11, 19 [9 Cal.Rptr. 607, 357 P.2d 839].)

In the present case, defendant requested that the trial court strike the prior conviction allegations, as violative of the proscription against double punishment contained within section 654, and in the interest of justice, pursuant to section 1385. The trial court denied the request, finding no violation of section 654, and expressing the view that, under the Three Strikes law, it lacked the authority under section 1385 to strike a prior conviction allegation. As noted, defendant thereafter was convicted of having committed petty theft with a prior. The Court of Appeal affirmed the judgment and remanded the matter to allow the trial court to exercise its discretion to strike one of the prior conviction allegations, because the trial court had stated on the record its mistaken belief that it lacked discretion to strike the prior. (See *Romero, supra*, 13 Cal.4th 497, 529-532; *People* v. *Fuhrman, supra*, 16 Cal.4th 930, 944.)

II.

A.

Section 1170.12, subdivision (b), part of the Three Strikes law enacted by the electorate, provides in pertinent part: "*Notwithstanding any other provision of law* . . . a prior conviction of a felony shall be defined as: [¶] (1) Any offense defined in subdivision (c) of Section 667.5 as a violent felony or any offense defined in subdivision (c) of Section 1192.7 as a serious felony in this state. . . . *None of the following dispositions shall affect the determination that a prior conviction is a prior felony* . . . : [¶] . . . [¶] (B) *The stay of execution of sentence.*" (Italics added; see also § 667, subd. (d) [legislative version].)

Defendant contends that the Three Strikes law cannot properly be interpreted to permit separate strikes to be imposed for offenses that in a prior proceeding were determined to have been committed as part of an indivisible transaction, committed against a single victim, and as to which it was concluded that imposition of separate punishment for each offense would constitute multiple punishment proscribed by section 654. Because the trial court implicitly found in the 1980 proceeding that section 654 precluded the imposition of punishment on the count involving assault with intent to commit murder (having determined that the offense was part of the same transaction that gave rise to the residential burglary count), and stayed the execution of sentence on that count, defendant urges this court to hold that the trial court erred in counting as strikes the convictions for both the residential burglary and the assault with intent to commit murder.

In support of his contention, defendant relies upon this court's decision in *People* v. *Pearson* (1986) 42 Cal.3d 351 [228 Cal.Rptr. 509, 721 P.2d 595]

*(Pearson).* In *Pearson* (decided eight years prior to the 1994 enactment of the Three Strikes law), the defendant committed an act of sodomy on each of two children. For each act, he was convicted of two offenses—sodomy with a child under fourteen years of age (§ 286, subd. (c)), and lewd conduct (§ 288, subd. (a)). The trial court imposed sentence on the lewd conduct convictions, but stayed sentence on the sodomy convictions so as to prevent the defendant from being punished twice for the same act. (§ 654.)

In affirming the judgment of the trial court, we explained in *Pearson*: "In the case at bar the trial court . . . stayed execution of sentence on each of the sodomy counts, the stays to become permanent on completion of the sentence on the lewd conduct counts. The question remains whether defendant can be subjected to future enhancements based on all four of his convictions in this case. We conclude that he cannot. Any subsequent sentences imposed on defendant can be enhanced on the basis of the convictions for which he served a sentence; but convictions for which service of sentence was stayed may not be so used *unless the Legislature explicitly declares that subsequent penal or administrative action may be based on such stayed convictions.* Without such a declaration, it is clear that section 654 prohibits defendant from being disadvantaged in any way as a result of the stayed convictions." (42 Cal.3d at p. 361, italics added.)

As is indicated by the italicized portion of the quoted passage, the court in *Pearson* explicitly acknowledged that even when multiple punishment for separate offenses has been barred under section 654 in an earlier proceeding, the Legislature is free to authorize the designation of such prior felony convictions as separate priors for purposes of determining the appropriate sentence following a subsequent conviction.

The parties in the present case dispute whether, in enacting the Three Strikes law, the Legislature spoke with sufficient clarity to invoke the proviso set forth in *Pearson.* In addressing this issue, the trial court observed: "I thought the new Three Strikes law said that all other laws notwithstanding this will be how you sentence. *And if you have a conviction, it didn't matter whether the other court stayed it or what it did.* [I]f there was a felony conviction, . . . it didn't matter whether you went to prison. It didn't matter whether you had good conduct for five years. It didn't matter whether . . . all your counts were in the same case, but the two felony convictions would count for the Three Strikes law. I thought that was clear." (Italics added.)

The Court of Appeal agreed with the trial court's conclusion, explaining: "Appellant presents us with 24 pages of briefing as to why the statute is

ambiguous. We repeat the foremost rule of statutory construction: ' " 'Where the statute is clear, courts will not "interpret away clear language in favor of an ambiguity that does not exist." ' " . . .' (*People* v. *Coronado* [(1995)] 12 Cal.4th [145,] 151 [citation].) We need go no further than the language used in the Three Strikes law and need not indulge in any analysis based upon the various principles that are used in instances where the language and intent of a statute are unclear. We must conclude, based upon the plain language of the statute, that the Legislature and the voters through the initiative process clearly intended that each conviction for a serious or violent felony counts as a prior conviction for sentencing purposes under the Three Strikes law, even where the convictions were based upon conduct against a single victim committed at the same time with a single intent, and where pursuant to section 654 the defendant was punished for only a single crime. (Cf. *People* v. *Askey* (1996) 49 Cal.App.4th 381, 386 [56 Cal.Rptr.2d 782]; *People* v. *Superior Court* (*Arevalos*) (1996) 41 Cal.App.4th 908 [48 Cal.Rptr.2d 833]; *People* v. *Allison* (1995) 41 Cal.App.4th 841, 844 [48 Cal.Rptr.2d 756].)"

We agree with the Court of Appeal's conclusion that the electorate through the initiative process adequately invoked the proviso set forth in *Pearson* when it defined the term "prior conviction" in section 1170.12, subdivision (b)(1), for purposes of the Three Strikes law. ■ Well-settled rules apply: "When statutory language is clear and unambiguous, there is no need for construction and courts should not indulge in it." (*People* v. *Overstreet* (1986) 42 Cal.3d 891, 895 [231 Cal.Rptr. 213, 726 P.2d 1288]; see also *People* v. *Valladoli* (1996) 13 Cal.4th 590, 597 [54 Cal.Rptr.2d 695, 918 P.2d 999] ["Our first step is to scrutinize the actual words of the statute, giving them a plain and commonsense meaning."]; *People* v. *Jones* (1993) 5 Cal.4th 1142, 1146 [22 Cal.Rptr.2d 753, 857 P.2d 1163] [" ' "If the language is clear and unambiguous there is no need for construction . . . ." ' "]; *People* v. *Ramirez* (1995) 33 Cal.App.4th 559, 566 [39 Cal.Rptr.2d 374] [it is unnecessary to look beyond the plain words of the statute to determine intent].)

■ As we already have noted, section 1170.12, subdivision (b)(1), specifies that, for purposes of the Three Strikes law, a prior conviction of a felony is defined as a prior conviction of *any offense* described as a violent or serious felony in section 667.5, subdivision (c), and section 1192.7, subdivision (c). Significantly, section 1170.12, subdivision (b)(1), also includes specific language declaring that "[n]one of the following dispositions shall affect the determination that a prior conviction is a prior felony for purposes of this section: [¶] . . . [¶] (B) *The stay of execution of sentence.* . . ." (Italics added.)

The courts of this state on occasion have found fault with the imprecise nature of language contained within statutory enactments. We find it difficult, however, to imagine language clearer, or more unequivocal, than that

set forth above. (Cf. *People* v. *Allison* (1995) 41 Cal.App.4th 841, 844, fn. 4 [48 Cal.Rptr.2d 756] [Rejecting a claim that the Three Strikes law embodies a " 'brought and tried separately' requirement," and observing: "[W]e find that the language of section 667, subdivision (d) is clear and unambiguous . . . ."].) Indeed, the effect of the interpretation urged by defendant would be to replace the phrase "[t]he stay of execution of sentence" (sections 1170.12, subdivision (b)(1)(B), 667, subdivision (d)(1)(B)) with the words "the stay of execution of sentence, *except those stays mandated by section 654*." Defendant's proposed construction of the statute is one to which the plain language is not reasonably susceptible. (See § 4 [Penal Code provisions "are to be construed according to the fair import of their terms."].)[5]

In our view, the language of section 1170.12, subdivision (b)(1), unequivocally establishes that the electorate intended to qualify as separate strikes *each* prior conviction that a defendant incurred relating to the commission of a serious or violent felony, notwithstanding the circumstance that the trial court, in the earlier proceeding, may have stayed sentence on one or more of the serious or violent felonies under compulsion of the provisions of section 654.

Defendant contends that because section 1170.12, subdivision (b)(1), does not refer specifically to the suspension or stay of sentence *under the compulsion of section 654*, the Three Strikes law is not sufficiently clear to overcome the general rule of *Pearson*. We cannot agree. As noted above, section 1170.12, subdivision (b), specifically provides in its introductory clause that a strike for purposes of the Three Strikes law "shall be defined" as set forth in the subdivision "[*n*]*otwithstanding any other provision of law* . . . ." (Italics added.) The subdivision also provides explicitly that a stayed or suspended sentence is not exempt from qualifying as a strike (§ 1170.12, subd. (b)(1)(B)), a provision that is *not* limited to sentences stayed or suspended for purposes *other* than those set forth in section 654. In view of the clear language contained within section 1170.12, subdivision (b)(1), enacted after *Pearson*, we believe this provision reasonably must be interpreted to mean that separate strikes must be counted even if, in a prior proceeding, the sentence on a serious or violent felony conviction was stayed or suspended pursuant to section 654.

Defendant suggests that such a reading of section 1170.12, subdivision (b)(1)(B), would overrule established judicial precedents, and encourage

---

[5]There is irony in defendant's position that it is appropriate to assume that the reference within the 1980 abstract of judgment to the word "stay" refers to a stay pursuant to section 654 (see *ante*, p. 27, fn. 4), but that the electorate's identical use of the undifferentiated term "stay," in section 1170.12, subdivision (b)(1)(B), should not be interpreted to include a stay issued pursuant to section 654.

prosecutors to "overcharge" defendants. On the contrary, it is defendant's argument in this regard that is misconceived. *Pearson* clearly recognized that the Legislature is free to adopt a sentencing scheme that abrogates the holdings of certain judicial decisions pertaining to the sentencing of recidivists. In enacting their respective versions of the Three Strikes law, the Legislature and the electorate accomplished precisely that.

Defendant contends, and the dissent correctly recognizes, that the term "stay" arises in a number of contexts other than stays granted under section 654. (See, e.g., § 1170.1, subd. (d); Cal. Rules of Court, rule 447 [stay permitted where term imposed exceeds statutory limits]; *People v. Karaman* (1992) 4 Cal.4th 335, 341 [14 Cal.Rptr.2d 801, 842 P.2d 100] [temporary stay of sentence to permit defendant to assist his family in moving to a new residence].) Yet this circumstance does not advance defendant's position. To the contrary, it emphasizes the great significance we should accord to the use of broad language by the electorate and the Legislature to exclude *all* stays of execution of sentence, without qualification or exception. (§§ 1170.12, subd. (b)(1)(B), 667, subd. (d)(1)(B).) In view of the statute's general, all-encompassing language, and the variety of contexts in which a stay may be granted, the electorate was not required to enumerate specifically each and every type of stay it intended to override. Defendant concedes as much, observing that "To create an exception [to section 654], the other statute need not refer to section 654 explicitly." (See *People v. Hicks* (1993) 6 Cal.4th 784, 791-792 [25 Cal.Rptr.2d 469, 863 P.2d 714] [holding that the Legislature was *not required to cite section 654* in section 667.6, subdivision (c), in order to demonstrate an intent to override the general provisions contained within section 654]; see also *People v. Ramirez, supra,* 33 Cal.App.4th 559, 573 [Holding, with regard to section 667, subdivision (e), that "A statute which provides that a defendant shall receive a sentence enhancement in addition to any other authorized punishment constitutes an express exception to section 654."]; *People v. Powell* (1991) 230 Cal.App.3d 438, 441 [281 Cal.Rptr. 568] [a case predating enactment of the Three Strikes law, holding that language contained in Health and Safety Code section 11370.2, authorizing " 'double punishment' . . . 'in addition to any other punishment authorized by law,' " prevailed over the proscription against double punishment contained within section 654, even though section 654 was not mentioned in the statute].)

In sum, in seeking to exclude section 654 from the scope of section 1170.12, subdivision (b)(1)(B), defendant fails to accord proper deference to the latter's broad language—"[n]otwithstanding *any other provision of law*" and "[t]he stay of execution of sentence." (Italics added.) Nor does defendant attempt to distinguish the judicial decisions, cited above, that have

upheld the Legislature's power to override section 654 in specific circumstances by enactments that do not cite the statute explicitly.

### B.

Even if it were necessary to look beyond the plain language of the applicable statute, we would reach the same conclusion regarding the proper interpretation of section 1170.12, subdivision (b)(1), in light of the statute's history, and the general legislative purpose and objectives underlying the Three Strikes legislation. ■ Past cases establish that ballot arguments accompanying an initiative may be considered in attempting to ascertain the electorate's intent in adopting the measure. (*Romero, supra,* 13 Cal.4th 497, 528.) ■ The ballot arguments accompanying the Three Strikes initiative provision included the following comments: "[Serious or violent] [c]onvictions [committed] before 1994 . . . are counted as strikes." (Ballot Pamp., argument in favor of Prop. 184, as presented to the voters, Gen. Elec. (Nov. 8, 1994) p. 36; see also *id.,* Analysis by the Legis. Analyst, at p. 33 ["If the person has *two or more previous* serious or violent felony convictions, the mandatory sentence for *any new* felony conviction . . . is life imprisonment . . . ." (Original italics.)].) Although defendant contends that prior convictions may be counted as strikes *if, and only if, sentence on these convictions was not stayed in a previous criminal proceeding pursuant to section 654,* nowhere is such intent evidenced in the ballot arguments that accompanied the initiative, or in the Legislative Analyst's analysis.

Similarly, an analysis of Assembly Bill No. 971, 1993-1994 Regular Session (the bill that, upon enactment, became the legislative version of the Three Strikes law), prepared by the staff of the Senate Committee on Judiciary, which was before the committee when it considered this legislation on February 17, 1994, stated: "This bill does not contain any requirement that the prior offenses be separate. Thus, a single act of robbery of three people in a store could result in a sentence of 25 years to life. Likewise, *one case with two counts of a serious felony would subject the defendant to a life sentence* for *any* future felony." (Sen. Com. on Judiciary, Analysis of Assem. Bill No. 971 (1993-1994 Reg. Sess.) as amended Jan. 26, 1994, p. 9, first set of italics added.) In addition, in comparing Assembly Bill No. 971 with other comparable sentencing bills then pending before the Legislature, the Senate Committee on Judiciary analysis states that, whereas one of the other bills "requires that the prior convictions be on 'separate occasions' " and another bill "calls for 'separate convictions' and defines them as meaning . that the second crime was committed after the first conviction occurred," "[*Assembly Bill No.*] *971 and the* [*Three Strikes*] *initiative do not require that the prior convictions be separate in any way.*"

(*Id.* at p. 10, italics added.) Nothing in the analysis prepared for the committee suggests that the bill contained an exception for prior convictions as to which sentence was stayed pursuant to section 654.[6]

Although section 1170.12, subdivision (b)(1), does not refer explicitly to section 654, its broad reference to "stay of execution of sentence" reasonably includes stays under section 654. This type of stay frequently is used in sentencing for serious felony convictions. Defendant defies logic in suggesting that the electorate and the Legislature intended to reference *only some types* of stays, *but not others*, in drafting this exception. If only certain types of stays were intended to be included, the electorate or the Legislature could have so indicated. (Cf. *People* v. *Superior Court (Himmelsbach)* (1986) 186 Cal.App.3d 524, 536, fn. 8 [230 Cal.Rptr. 890] [Rejecting a contention that the language of section 12311, prohibiting " 'suspension of execution' of sentence," precluded a stay under section 654, observing that the two terms are distinct "terms of art" and that "[t]he Legislature could have expressly prohibited a 'stay' of execution . . . , but it did not."].)

Defendant contends that there is "no rational basis" for a person accused of having committed residential burglary and assault with intent to commit murder to be considered a "two strike" offender, when those crimes were part of a single act committed against a single victim, committed at the same time with a single intent, and when the crimes were punished as a single crime pursuant to section 654. We disagree. Whether defendant formed the intent to assault his victim prior to his felonious entry into his victim's residence, or after he encountered her, is less significant for purposes of the Three Strikes law than the fact that his prior criminal conduct yielded *two convictions*. In contrast to section 654, which is concerned with the appropriate punishment for "[a]n act or omission that is punishable in different ways," the Three Strikes law has, as its central focus, *the status* of the defendant as a repeat felon—i.e., whether the defendant proceeded to commit a subsequent felony after already having been convicted of one or more serious or violent felonies. Thus, there clearly was a rational basis upon which the electorate and the Legislature could direct the courts, in cases involving a defendant with two prior felony *convictions* who thereafter

---

[6]The analysis regarding Assembly Bill No. 971 (1993-1994 Reg. Sess.) was prepared by the staff of the Senate Committee on Judiciary to assist the members of the committee in their legislative consideration of Assembly Bill No. 971. (See Sen. Com. on Judiciary, Analysis of Assem. Bill No. 971 (1993-1994 Reg. Sess.) as amended Jan. 26, 1994.) This document, which was before the Legislature during its deliberations on the legislation in question, falls within the class of documents that this court traditionally has considered in determining legislative intent. (See, e.g., *Romero, supra,* 13 Cal.4th 497, 504, fn. 1.) Although the parties here have not requested that we take judicial notice of the committee's analysis, we are empowered to do so. (See Evid. Code, §§ 452, 459.)

commits a subsequent felony, to count *each* prior felony conviction as a strike, in effect declining to extend the leniency previously afforded the defendant when sentence on a prior felony conviction was stayed under section 654. In the present case, defendant received the benefit of section 654 when he was sentenced for the felonies he committed in 1979; *it was only when defendant reoffended after the enactment of the Three Strikes law that he faced the prolonged incarceration of which he now complains.* The Three Strikes law provided him with notice that he would be treated as a recidivist if he reoffended. (See *People* v. *Askey* (1996) 49 Cal.App.4th 381, 387 [56 Cal.Rptr.2d 782].) He chose to ignore that notice and commit a subsequent felony.[7]

We similarly reject defendant's contention that in determining defendant to have suffered two strikes based on his crimes committed in 1979, the trial court acted contrary to the principles of the Three Strikes law. Defendant was convicted of having committed two serious or violent felonies in 1979; the electorate and the Legislature rationally could have determined that he therefore posed a greater threat to public safety than a defendant who had committed only one such offense, such as residential burglary, without the ensuing assault to commit murder. In our view, the electorate and the Legislature rationally could—and did—conclude that a person who committed additional violence in the course of a prior serious felony (e.g., shooting or pistol-whipping a victim during a robbery, or assaulting a victim during a burglary) should be treated more harshly than an individual who committed the same initial felony, but whose criminal conduct did not include such additional violence. The facts of the present case provide a classic illustration of the wisdom of that distinction: In stabbing his victim approximately 20 times, this defendant demonstrated that he posed a far greater threat to public safety than a defendant who has committed a residential burglary without committing such gratuitous violence.

Defendant contends that "dramatic and harsh results" would ensue if this court were to interpret the Three Strikes law as having intended to qualify, as

---

[7]Contrary to defendant's contention, our conclusion may not properly be construed as holding that the Three Strikes law constitutes an "implied repeal" of section 654. In view of the explicit language set forth in section 1170.12, subdivision (b)(1)(B), which provides that a "stay of execution of sentence" shall not affect the determination that a prior conviction constitutes a strike for purposes of the legislation, our analysis does not rely upon "implications" culled from ambiguous statutory language. Nor does our analysis suggest a "repeal" of section 654; rather, we simply conclude that in enacting the comprehensive sentencing scheme set forth in the Three Strikes law, the Legislature and the electorate sought to ensure that, *for purposes of the Three Strikes law*, a defendant's prior serious felony *convictions* would count as "strikes," regardless of whatever leniency a court *previously* had afforded to that defendant at *sentencing*. Nothing contained in this opinion affects the application of section 654 in other contexts.

a separate "strike," a prior conviction for a serious or violent felony even if the sentence on that conviction was stayed under the provisions of section 654. In the absence of any constitutional infirmity, however, we are not at liberty to alter the intended effect of a statute on such grounds. (See generally, *People* v. *Askey, supra,* 49 Cal.App.4th 381, 387 [rejecting the defendant's claim that "because all his strikes were incurred in a single prior proceeding," a sentence of 25 years to life in prison was disproportionate and excessive].) It is worth noting, however, that our decision in *Romero, supra,* 13 Cal.4th 497, affirms that a trial court retains discretion in such cases to strike one or more prior felony convictions under section 1385 if the trial court properly concludes that the interests of justice support such action. (13 Cal.4th at p. 504.)[8]

Under defendant's suggested interpretation, by contrast, a trial court could *never* count, as more than one strike, multiple prior felony convictions that arose from multiple criminal acts, committed during a single course of conduct waged against a single victim. Thus, under defendant's view, an individual who had been convicted in a prior proceeding of burglary, kidnapping, and rape based upon a single incident committed against a single victim and who, upon release from prison, committed similar crimes against a new victim necessarily would be treated as a "one strike" offender. In view of the language and objectives of the Three Strikes law, we believe the inflexible result advocated by defendant—precluding a conviction on which sentence was stayed under section 654 from *ever* being treated as a separate strike—is untenable. Instead, we believe that the statute properly must be interpreted to permit—but not necessarily require—a qualifying prior conviction to be treated as a strike even if the sentence on the conviction has been stayed pursuant to the provisions of section 654.

### III.

In view of the unequivocal declaration contained within section 1170.12, (b)(1)(B) (a command that is consistent with the voters' expressed intent underlying that section), we conclude that the trial court properly found that defendant's two prior qualifying felony convictions rendered him subject to sentence as a "third strike" offender.

We therefore affirm the judgment of the Court of Appeal, which, as noted previously, affirmed defendant's judgment of conviction but remanded the

---

[8]Because the proper exercise of a trial court's discretion under section 1385 necessarily relates to the circumstances of a particular defendant's current and past criminal conduct, we need not and do not determine whether there are some circumstances in which two prior felony convictions are so closely connected—for example, when multiple convictions arise out of a single act by the defendant as distinguished from multiple acts committed in an indivisible course of conduct—that a trial court would abuse its discretion under section 1385 if it failed to strike one of the priors.

matter to the trial court for resentencing, because that court mistakenly believed it lacked the authority to strike a prior conviction allegation. (See *Romero, supra,* 13 Cal.4th 497, 529-532.) We express no opinion as to how the trial court should exercise its discretion under section 1385.

Kennard, J., Baxter, J., and Brown, J., concurred.

**CHIN, J.**—I dissent. The "Three Strikes" law, designed to punish habitual criminals severely, provides much harsher penalties for the recidivist who has committed two or more previous serious or violent crimes, or "strikes," than for the recidivist who has committed only one previous qualifying crime. Ignoring this central purpose of the law, the majority interprets it so that *one* previous criminal act or omission may, depending on exactly how the prior crimes were charged, give rise to *two or more* strikes. To reach this unwarranted result, the majority must also overturn decades of case law designed to protect against multiple punishment for a single act.

In the current offense, defendant shoplifted a carton of cigarettes and was convicted of petty theft with a prior. In 1979, he entered an apartment intending to assault the resident and did so, stabbing her some 20 times. For that atrocious act, he was convicted of (1) burglary for entering the apartment with the intent to assault and (2) assault with intent to commit murder. Although defendant was properly convicted of both crimes, Penal Code section 654[1] permits that he be punished only once for them because, under settled legal principles, both convictions were based on a single "act or omission." Therefore, the trial court in the earlier proceeding imposed punishment for only one of the convictions. Using a procedural device the courts developed to comply with section 654, the court "stayed" the sentence for the other conviction.

The Legislature and electorate have enacted separate but substantially identical Three Strikes laws increasing prison sentences for persons with one strike and increasing them further for persons with two strikes. The majority concludes that because defendant was convicted earlier of two crimes for the same act, he received *two* strikes at once and is thus subject to a prison term of twenty-five years to life. I cannot agree. Although defendant is a recidivist and deserves the increased punishment the Three Strikes law has reserved for those who commit a crime and then commit another, this is a *second* strike case, not a third strike case.

In *People v. Fuhrman* (1997) 16 Cal.4th 930, 937-940 [67 Cal.Rptr.2d 1, 941 P.2d 1189], we held that prior convictions need not have been brought

---

[1]All further statutory references are to the Penal Code.

and tried separately for each to qualify as a strike. I joined that holding. However, we expressly reserved the distinct issue whether a conviction that could not be separately punished may be a strike *in addition to* the conviction for which the defendant *was* punished. (*Id.* at pp. 936, 941.) Here, I part company with the majority. Section 654 has been the law of California since the early days of statehood. It prohibits multiple punishment for the two prior convictions. A conviction that may not be separately punished does not qualify as a separate strike. We should not transform one strike into two.

To place this issue in perspective, I first present a historical review of section 654 and the procedure the courts adopted to implement it. I then analyze the relevant portions of the Three Strikes law with that perspective in mind.

## I. HISTORICAL REVIEW

Section 654 was enacted in 1872. Although amended as recently as 1997, it has remained unchanged in relevant respects. It currently provides, as relevant: "An act or omission that is punishable in different ways by different provisions of law shall be punished . . . , but in no case shall the act or omission be punished under more than one provision." The statute is silent on the procedure to follow when there are multiple convictions that may be punished but once. The courts developed that procedure.

The question the courts faced was how to guarantee a defendant would not receive multiple punishment in violation of section 654 without giving that defendant an undeserved windfall. Generally, the Legislature has permitted multiple *conviction* even when multiple punishment is prohibited. "An accusatory pleading may charge two or more different offenses connected together in their commission, or different statements of the same offense . . . . The prosecution is not required to elect between the different offenses or counts set forth in the accusatory pleading, but the defendant may be convicted of any number of the offenses charged . . . ." (§ 954.) As we explained in *People* v. *Pearson* (1986) 42 Cal.3d 351, 354 [228 Cal.Rptr. 509, 721 P.2d 595] (*Pearson*), "Section 954 sets forth the general rule that defendants may be charged with and convicted of multiple offenses based on a single act or an indivisible course of conduct." The courts had to decide how to treat multiple convictions that could be punished but once. Setting aside all but one of the convictions would be unwise because, if that conviction were ever vacated for any reason, the others would not be available to replace it. The courts struggled with this question in the decade of the 1960's.

Early cases were inconsistent in their treatment of cases covered by section 654. Some simply set aside the excess conviction. (See *People* v.

*McFarland* (1962) 58 Cal.2d 748, 763 [26 Cal.Rptr. 473, 376 P.2d 449].) However, as we noted in *McFarland*, "section 654 proscribes double punishment, not double conviction . . . ." (*Id.* at p. 762.) In *McFarland*, because "[t]he appropriate procedure . . . is to eliminate the effect of the judgment as to the lesser offense insofar as the penalty alone is concerned," we "reversed [the judgment] insofar as it imposes a sentence for grand theft, and in all other respects" affirmed. (*Id.* at p. 763.) The modern procedure of staying the impermissible punishment had not yet developed.

That procedure was first used in *People* v. *Niles* (1964) 227 Cal.App.2d 749 [39 Cal.Rptr. 11] (*Niles*). In *Niles*, the trial court did what has become the standard; it "stay[ed]" sentence on the lesser offense. The appellate court considered whether that procedure satisfied section 654's prohibition against multiple punishment. In a thoughtful discussion that established the legal foundation for future section 654 jurisprudence, the court found the "stay" did satisfy section 654. Citing *McFarland*, the court first noted that section 654 only proscribes multiple punishment, not multiple conviction. (*Niles, supra,* 227 Cal.App.2d at p. 756.) "It is obvious," the court stated, "that this rule poses real problems for a trial court at the time of sentence. . . . [I]f it dismisses the count carrying the lesser penalty, and the conviction on the remaining count should be reversed on appeal, the defendant would stand with no conviction at all. . . . It follows that the procedure adopted by the trial court in this case was a reasonable—and so far as we can see the only possible—reconciliation of the various policies involved. Any other method either incurs the risk of letting a defendant escape altogether, or else imposes an unnecessary burden on an appellate court and on the trial court on the inevitable remand for correction of sentence. The procedure here affords appellant the maximum protection to which section 654 entitles him and, *under no condition*, can operate to his prejudice." (*Ibid.,* italics added.)

We took up the question in *In re Wright* (1967) 65 Cal.2d 650 [56 Cal.Rptr. 110, 422 P.2d 998]. There, the trial court imposed *concurrent* sentences for two convictions for which section 654 prohibited multiple punishment. We concluded that concurrent sentencing did not satisfy section 654 because sometimes "concurrent sentences violating section 654 would result in detrimental operation of other statutes that govern punishment." (*In re Wright, supra,* 65 Cal.2d at p. 654, fn. omitted.) Foreseeing the issue in this case, *we cited the possibility that the concurrent conviction might later be used as a prior conviction as a reason concurrent sentencing violated section 654.* (*Id.* at p. 654, fn. 2.) We cited the then new stay procedure of *Niles, supra,* 227 Cal.App.2d 749, as a valid method to satisfy section 654. (*In re Wright, supra,* 65 Cal.2d at pp. 655-656 & fn. 4.) "Although the Legislature has not expressly provided for a stay of execution of sentence in the *Niles*

situation, the power to proceed as the trial court did in that case is within the fair import of section 654. As the appellate court there explained (227 Cal.App.2d at p. 756) that procedure reasonably reconciles the policies involved in applying section 654 to protect the rights of both the state and the defendant." (*Id.* at p. 656, fn. 4.)

More recently, in *Pearson*, we considered whether we should "prohibit the use of more than one conviction based on each of [defendant's] criminal acts for the purpose of enhancing any subsequent sentences he may receive." (*Pearson, supra,* 42 Cal.3d at p. 358.) We noted that in *In re Wright* we "balanced the potential windfall to the defendant of reversing multiple convictions against the prejudice to him of allowing sentencing for such convictions. We then determined that the procedure of staying execution of sentence for multiple convictions instead of reversing such convictions 'reasonably reconciles the policies involved in applying section 654 to protect the rights of both the state and the defendant,' and follows logically from the section 654 prohibition against punishing the defendant under more than one provision based on a single criminal act. ([*In re Wright, supra,* 65 Cal.2d] at pp. 655-656, fn. 4.)" (*Pearson, supra,* 42 Cal.3d at p. 360.)

We concluded that "Any subsequent sentences imposed on defendant can be enhanced on the basis of the convictions for which he served a sentence; but convictions for which service of sentence was stayed may not be so used unless the Legislature explicitly declares that subsequent penal or administrative action may be based on such stayed convictions." (*Pearson, supra,* 42 Cal.3d at p. 361.) We quoted a Court of Appeal opinion "explaining that 'The practice of staying was accepted as compatible with the prohibition against multiple punishment because it was assumed no incremental punishment can flow from the stayed sentences' " (*Pearson, supra,* 42 Cal.3d at p. 361), and we specifically stated that "*if defendant here were subjected to future sentence enhancements based on his stayed convictions, this would also constitute the type of 'incremental punishment' that section 654 forbids.*" (*Id.* at p. 362, italics added.)

We also noted that some Court of Appeal decisions were so concerned with the possible erroneous future use of convictions stayed under section 654 that they stayed not only the punishment for the conviction but also *use* of the conviction as a prior; one case went so far as to set aside the conviction entirely to guard against that possibility. (*Pearson, supra,* 42 Cal.3d at p. 362.) These cases, we said, "were properly concerned with the potential or actual application of enhancement statutes to stayed convictions. Although it is true that 'increased penalties for subsequent offenses are attributable to the defendant's status as a repeat offender and arise as an

incident of the subsequent offense rather than constituting a penalty for the prior offense'. [citation], *a defendant's status as a repeat offender relates to the number of wrongful acts he committed, not to the number of his convictions.* In keeping with our reason for using stays in multiple conviction situations, the defendant is penalized if he suffers enhancements based on stayed convictions. Thus *to enhance a defendant's sentence because of a stayed conviction would constitute multiple punishment and is prohibited by section 654.*" (*Id.* at pp. 362-363, italics added, fn. omitted.)

California courts have consistently followed the *Niles* stay procedure for the last three decades, believing that the court-created procedure satisfied section 654's mandate that the stayed conviction "under no condition, can operate to [defendant's] prejudice" (*Niles, supra,* 227 Cal.App.2d at p. 756) and would prevent future use of the conviction (*In re Wright, supra,* 65 Cal.2d at p. 654 & fn. 2; *Pearson, supra,* 42 Cal.3d 351). This case tests whether this belief was well founded or merely an illusion, and whether 30 years of section 654 jurisprudence was built on a solid foundation or quicksand.

## II.  THE THREE STRIKES LAW

Against this historical backdrop, I consider the Three Strikes statute. The majority's interpretation means that we, the courts, were wrong the last 30 years in concluding that the stay procedure would protect defendants from having the stayed sentence used as a prior conviction. At the least, the Three Strikes statute should explicitly declare this result before we so conclude. In another case involving section 654, we stressed that "[a]s a general rule of statutory construction, of course, repeal by implication is disfavored. [Citation.] Such repeal is particularly disfavored when, as here, the statute allegedly repealed expresses a legal principle that has been a part of our penal jurisprudence for over a century." (*People* v. *Siko* (1988) 45 Cal.3d 820, 824 [248 Cal.Rptr. 110, 755 P.2d 294].) "[S]ection 654 . . . is presumed to govern every case to which it applies by its terms—unless some other statute creates an express exception." (*Ibid.*)

The pertinent language of the Three Strikes law is found in section 1170.12, subdivision (b): "Notwithstanding any other provision of law and for the purposes of this section, a prior conviction of a felony shall be defined as:

"(1) Any offense defined in subdivision (c) of Section 667.5 as a violent felony or any offense defined in subdivision (c) of Section 1192.7 as a serious felony in this state. . . . None of the following dispositions shall

affect the determination that a prior conviction is a prior felony for purposes of this section:

"    .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .

"(B)   The stay of execution of sentence."

Nothing in this language "explicitly declares" (*Pearson, supra,* 42 Cal.3d at p. 361) that a conviction for which section 654 prohibits punishment can be a separate strike. One thing is clear: The mere fact the sentence for one of the convictions was stayed does not "affect" its use as a strike. But that is not the question. The sentence here was not merely stayed; it was stayed to comply with section 654's mandate that the conviction not be used for *any* penal purpose, including as a prior conviction. Section 654, not the stay, affects the conviction's use as a strike. It does not violate section 654 to enhance a sentence for a prior conviction because the defendant is being punished for recidivism. (*Pearson, supra,* 42 Cal.3d at p. 363.) But it does violate that section to enhance a sentence *twice*, once each for two prior convictions, if the convictions arose from the same act within the meaning of the section. As we explained in *Pearson,* "a defendant's status as a repeat offender relates to the number of wrongful acts he committed, not to the number of his convictions." (*Ibid.*)

The majority cites the language in *Pearson* that "convictions for which service of sentence was stayed may not be so used unless the Legislature explicitly declares that subsequent penal or administrative action may be based on such stayed convictions." (*Pearson, supra,* 42 Cal.3d at p. 361, quoted in maj. opn., *ante,* at p. 29.) It concludes the Legislature (or electorate) has explicitly so declared. I disagree. For present purposes, I am willing to assume (but not decide; the implication in *Pearson* the majority cites was clear dicta, and constitutional due process principles may underlie section 654) that the Legislature may, if it *explicitly* says so, multiply punish prior convictions even if multiple punishment was prohibited at the time of the convictions. But the mere reference to a stay of execution of sentence is not such an explicit declaration. It is not the stay that affects the conviction's use as a strike; it is section 654.

The majority also cites the language at the beginning of section 1170.12, subdivision (b): "*Notwithstanding any other provision of law* and for the purposes of this section, a prior conviction of a felony shall be defined as . . . ." (Italics added.) The italicized language, however, merely refers to the definition of a qualifying conviction. The Penal Code contains a number of definitions of different types of convictions for various purposes. This

language makes clear that the Three Strikes law has its own definition notwithstanding any other. It falls far short of an explicit declaration that the Three Strikes law has abrogated the fundamental promise that section 654 has made for over a century that a person will not be punished *twice* for the same act. Nothing in the Three Strikes law says that multiple convictions for which the defendant may be punished but once may be multiple strikes.[2]

The majority claims support in a committee report. (Maj. opn., *ante*, at pp. 33-34 & fn. 6, citing Sen. Com. on Judiciary, Analysis of Assem. Bill No. 971 (1993-1994 Reg. Sess.) as amended Jan. 26, 1994, pp. 9-10.) That report does not support the majority. It merely says the prior offenses need not be "separate" to count as strikes. The report is relevant to the brought-and-tried-separately argument we resolved unanimously in *People* v. *Fuhrman, supra*, 16 Cal.4th at pages 937-940, but not to the "distinct" (*id*. at p. 936) issue we reserved for this case. The example in the report illustrates this point. A " 'single act of robbery of three people in a store' " (maj. opn., *ante*, at p. 33) is a crime of violence against multiple victims. Section 654 does not prohibit multiple punishment when there are multiple victims. (*People* v. *Latimer* (1993) 5 Cal.4th 1203, 1212 [23 Cal.Rptr.2d 144, 858 P.2d 611].) The report addresses a situation where section 654 does not apply. It does not address the issue of this case, where section 654 *does* apply.

The majority acknowledges the parties have not requested us to judicially notice that committee report in this case. (Maj. opn., *ante*, at p. 34, fn. 6.) While I have no doubt "we are empowered to do so" (*ibid.*), the absence of a request is significant. The Attorney General *did* formally request us to judicially notice that report, but in *Fuhrman*, not this case. In the *Fuhrman* request, he stated, correctly, "The document is relevant to the issue . . . whether prior convictions must arise from separate cases in order to be counted as strikes." The Attorney General, who vigorously argues for two strikes in this case, recognizes that the report is relevant to the issue decided in *Fuhrman*, but not to the issue of this case.

The question before us has major practical consequences. Multiple convictions can often arise out of a single act. Here, there were two convictions, but there may be even more from one act. As an example, suppose a person stops a pedestrian at knifepoint and demands a watch. Based solely on that act, the person could conceivably be convicted of felony false imprisonment,

---

[2]The majority finds it "difficult . . . to imagine language clearer" than the language it cites. (Maj. opn., *ante*, at p. 31.) I find it quite easy to imagine clear language. If the Legislature and electorate had *really* intended to allow multiple strikes for a single act, they could have used explicit language such as this: "Multiple convictions arising out of the same act or omission shall be multiple strikes."

assault with a deadly weapon, and attempted robbery. Because each conviction would involve personal use of a deadly weapon, each could, individually, qualify as a strike. (See § 1192.7, subd. (c)(23).) Would that mean *three* strikes occur at once? When asked this hypothetical question at oral argument, the Attorney General suggested that the excess convictions in the earlier case might "be dismissed" to avoid multiple strikes. Dismissal, of course, is exactly what should *not* happen. The purpose behind using the stay mechanism to prevent unlawful multiple punishment was to *avoid* dismissal. The stayed convictions should be preserved in the event the conviction for which the punishment was imposed was set aside for any reason. Moreover, stay of sentence, rather than dismissal, has been the practice for 30 years; dismissal in the future would not address the problem of the numerous multiple convictions accumulated in the past based on single acts or omissions.

The system of permitting multiple convictions while staying the excess punishment has worked well, at least until now. If the result of today's holding is that courts dismiss entirely convictions governed by section 654 rather than merely staying the punishment, the prosecution may come to regret its victory.

The majority describes section 654 as affording defendants "leniency." (Maj. opn., *ante*, at p. 35.) But section 654 is not a matter of leniency. That provision, part of California law for over a century, codifies a basic notion of our criminal justice system: A person may be punished for criminal activity—indeed, punished severely—but may be punished only once for a single act not involving multiple victims. I do not suggest that because a court was lenient before, it must be lenient again. The court was not lenient before; treating defendant now as a repeat offender is not lenient. But to treat this case as a *three* strikes case is excessive.

Permitting but one strike per act does not make meaningless the statutory reference to "The stay of execution of sentence." (§ 1170.12, subd. (b)(1)(B).) There are types of stays other than the one the courts created to comply with section 654. We identified two in *In re Wright*: a stay when the court grants probation, and a stay pending appeal. (*In re Wright, supra*, 65 Cal.2d at pp. 655-656, fn. 4.) As the majority recognizes (maj. opn., *ante*, at p. 32), a stay is permitted if the term exceeds statutory limits or to allow defendants to put their affairs in order. The statute prevents defendants from claiming a conviction was not a strike merely because it was stayed. For example, if a person is convicted of a serious felony and sentenced to state prison, but the court stays the sentence pending appeal, and the person then commits another felony, the earlier conviction could qualify as a strike despite the stay.

The majority asserts that my interpretation would effectively "replace the phrase '[t]he stay of execution of sentence' [citation] with the words 'the stay of execution of sentence, *except those stays mandated by section 654.*' " (Maj. opn., *ante*, at p. 31, majority's italics.) It would not. I do not rely on the stay but on section 654 itself and its fundamental principle that a person may be punished only once for the same act. The stay was merely a procedural tool the courts devised to comply with that principle. The procedure has existed for about three decades, the principle for over a century. The statute states only that the "disposition[]" of a stay shall not "affect the determination that a prior conviction is a" strike. (§ 1170.12, subd. (b)(1).) The majority transforms it to read, "if the disposition was a stay of execution of judgment, it must be determined that the prior conviction is a strike." The statute does not state that a conviction for which execution of sentence was stayed *must* be a strike; it merely says the stay itself does not preclude its use as a strike.

In the same mode, the majority finds "irony" in what it asserts to be defendant's "position" that the word "stay" in section 1170.12, subdivision (b)(1)(B), does not "include a stay issued pursuant to section 654." (Maj. opn., *ante*, at p. 31, fn. 5.) I do not understand that to be defendant's position.[3] It is certainly not mine. No stay, itself, affects the determination that a conviction is a strike. The statute is clear in this regard. It says nothing, however, about the prohibition against multiple punishment for the same act.

The majority states, "In our view, the electorate and the Legislature rationally could—and did—conclude that a person who committed additional violence in the course of a prior serious felony (e.g., shooting or pistol-whipping a victim during a robbery, or assaulting a victim during a burglary) should be treated more harshly than an individual who committed the same initial felony, but whose criminal conduct did not include such additional violence." (Maj. opn., *ante*, at p. 35.) I agree, except for the implication that my view is somehow different. As noted, I concurred in *Fuhrman*'s holding that the prior convictions need not be brought and tried separately. Multiple strikes may result from the same incident. Section 654 prohibits multiple punishment for "An act or omission that is punishable in different ways . . ."; it does not prohibit multiple punishment for all crimes committed on one occasion. Courts have permitted multiple punishment for multiple sex crimes against the same victim, for both a robbery and an

---

[3]Defendant expressly recognizes that "The use of the term 'stay' in the three strikes statutes explicitly states that a prior may be used as a 'strike' even though execution of sentence was stayed," but he argues, as do I, that "it is not the 'stay' that is at the heart of the rule reiterated in *Pearson*; it is the multiple use of priors arising from a single criminal 'act.' "

assault of the same victim, for multiple shots fired at the same victim, and, most pertinent here, for both burglary and rape when the burglary was for the purpose of *theft*. (See *People* v. *Latimer*, *supra*, 5 Cal.4th 1203, 1212, and cases there cited.) In each of these situations, under *Fuhrman*, multiple strikes would be allowed. In this case, the prior burglary was for the purpose of the assault, not for a different purpose such as theft. There was no criminal intent separate from the assault itself and no "additional" violence. My proposed holding is narrow, limited to those convictions, like these, that section 654 controls.

The majority also states, "The Three Strikes law provided [defendant] with notice that he would be treated as a recidivist if he reoffended." (Maj. opn., *ante*, at p. 35.) Again, I fully agree. Defendant is obviously a recidivist; he had full notice he would be treated as one if he reoffended; he *is* being treated as one. The issue is not whether defendant is a recidivist but whether he should be punished *twice* for the same act. Defendant clearly had a strike against him when he stole the cigarettes. The sole question is whether he had *two* strikes. He did not.

### III. CONCLUSION

Mine is but a modest proposal: A single act that may be punished only once may generate one strike, not two. Defendant was punished for his serious criminal behavior in 1979. He is properly being punished today as a recidivist. However, he has one strike against him, not two. Accordingly, I dissent.

Mosk, J., and Werdegar, J., concurred.