106 Cal.Rptr.2d 221 (2001)
88 Cal.App.4th 752
The PEOPLE, Plaintiff and Respondent,
v.
James Nichol HARRAH, Jr., Defendant and Appellant.
No. H020365.
Court of Appeal, Sixth District.
April 25, 2001.
Review Granted July 25, 2001.
*222 James Nichol Harrah, Jr.: Peter Gold By Appointment of the Court of Appeal Sixth District Appellate Project, for Appellant.
Bill Lockyer, Attorney General, David P. Druliner, Chief Assistant Attorney General, Ronald A. Bass, Senior Assistant Attorney General, Rene A. Chacon, Supervising Deputy Attorney General, Jeremy Friedlander, Deputy Attorney General, for Respondent.
Certified for Partial Publication[*]
MIHARA, J.
A jury found defendant James Nichol Harrah, Jr., guilty of one count of continual sexual abuse of a child under the age of 14, six counts of lewd or lascivious conduct on a child under 14, and one count of lewd and lascivious act on a child by a person at least 10 years older. (Pen.Code,[1] §§ 288.5, 288, subd. (a), 288, subd. (c)(1).) The court sentenced him to prison for a period of 21 years and 8 months. Defendant appeals from the judgment, claiming prosecutorial misconduct, the erroneous exclusion of his expert witness from the courtroom during the victim's testimony, violation of section 288.5, subdivision (c), ineffective assistance of counsel, and sentencing error. We find a violation of section 288.5, subdivision (c) and strike count six in the judgment.

FACTS
In the absence of any claim of insufficiency of the evidence, we generally summarize the trial testimony, which primarily came from defendant's stepdaughter, Crystal. Crystal's mother, Brenda, married defendant when Crystal was three years old. Brenda gave birth to a son, Kevin, a year after the marriage.
Crystal and defendant appeared to have a loving relationship. The girl constantly hugged everybody, including defendant. *223 Defendant did a lot of things with Crystal that he did not do with Kevin. He was always giving her money and taking her places. He taught her how to drive when she was only 10 years old.
Defendant was often sick, and spent time with Crystal while home from work. Crystal would get home from school at 2:30 p.m. when she was in elementary school, 3:30 p.m. when she was in junior high school, and about 4:00 p.m. when she was in high school.
Crystal, who was 15 at the time of trial, testified that the first time she thought defendant was touching her in an inappropriate way was when she was eight or nine years old. He would begin by giving her a regular hug, but then would touch her chest or grab her buttocks. This would happen a couple of times a day, whenever defendant gave her a hug. However, he never did it when somebody was around. This behavior continued until January of 1998.
Crystal stated that starting when she was in the third grade defendant would watch her taking showers. Crystal never said anything to him.
Crystal also stated that on one occasion, when she was in either third or fourth grade, she entered her parents' bedroom wearing a towel. Defendant grabbed Crystal, pulled her to the bed, and tried to put his penis into her vagina. The incident lasted approximately five minutes. Defendant was unsuccessful in completely penetrating her, but went further than her pubic hair.
Crystal started to develop breasts in the fourth or fifth grade when she was about nine or ten years old. She started menstruating when she was around 12.
When she was about seven and a half or eight years old, somebody in second grade mentioned the word, "come." Unfamiliar with the term, Crystal asked defendant its meaning. Rather than give an explanation, defendant masturbated until he achieved an orgasm. On cross-examination, Crystal said the incident occurred when she was in fifth or sixth grade.
In the summer of 1996, when Crystal was 11 or 12, defendant was supposed to awaken Crystal when her mother and Kevin were not there. He did so by putting his tongue and finger in her vagina. The girl squirmed to get away and defendant left her room. When he returned, defendant apologized and said that it was male hormones.
Crystal never reported these incidents at the time they occurred.[2] However, on January 17, 1998, while napping at her boyfriend's house, Crystal was awakened by a nightmare about the things defendant had done to her. When she told her boyfriend about what had occurred, he refused to let her return home. Crystal spent the night at her best friend's house. The following morning, she told her friend's mother. The mother called the police.
Police Officer Charlotte Pang came to the house, talked to Crystal for 15 or 20 minutes, then took her to the police station. At the station the police suggested that Crystal telephone defendant to see whether he would admit to her charges.
The police gave Crystal a list of questions to ask and taped the phone call. During the call, Crystal told defendant she did not want to return home because of what he did to her before. Defendant responded: "That was two years ago and it was a mistake. You know? And it was never going to happen again." Defendant *224 stated that he or Brenda needed to come and get Crystal, and the three of them would sit down and discuss the incident.
Brenda returned home while Crystal and defendant were on the phone. Defendant told Brenda that he had kissed Crystal all over her body two years before. He said he was very sorry, but blamed the incident on Crystal being too loving a child.
Defendant testified in his own defense. He denied all but one of Crystal's allegations of sexual assault.
Candace Chorjel, Ph.D., testified as an expert in the diagnosis and treatment of mental disorders, clinical psychology, and assessment of sexual abuse in victims and perpetrators. The psychologist testified that research in the area of sexual molestation indicates that there are certain characteristics often found in sexual deviants. She noted that defendant demonstrated two characteristics atypical of sexual deviants: empathy and lack of demandingness or control. Defendant's offer during the pretextual telephone call to sit down with his wife and Crystal to discuss the admitted incident of sexually inappropriate behavior was unusual for an offender.
Chorjel stated it was possible for children to invent, embellish or amplify allegations of sexual abuse in order to get what they want, like a divorce. However, on cross-examination, Chorjel agreed that approximately 95 percent of sexual abuse allegations by children are likely to be justified.
Chorjel testified that she could not say that defendant was sexually deviant, since she had not evaluated him. She concluded a full evaluation was unnecessary, since defendant had already admitted one act. Thus, there was no question regarding his capability. However, the fact that defendant had committed one deviant act did not mean that he is a sexual deviant or that he would do it again.

DISCUSSION

I.-II.[**]

III.

Violation of section 288.5
In count one defendant was charged with committing three or more acts of lewd or lascivious conduct with a child under the age of 14 between January 30, 1992 and June 30, 1994 in violation of section 288.5. In count six defendant was charged with committing a lewd and lascivious act with a child under the age of 14 by means of force or fear between January 1, 1993 and December 31, 1995 in violation of section 288, subdivision (b)(1); the jury convicted defendant of the lesser included offense of lewd and lascivious conduct without the use of force. Thus, the possibility arose that the lewd and lascivious conduct in count six occurred during the time of the continuous sexual conduct in count one. The jury convicted defendant of both offenses. At sentencing, the court imposed sentence for count one and stayed the term for count six pursuant to section 654. Defendant contends the state did not charge the lewd and lascivious conduct in the alternative and, therefore, violated section 288.5, subdivision (c). We agree.
Section 288.5 provides that a person who resides in the same home or has recurring access to a child, and who engages in three or more acts of substantial sexual conduct with the child over a period of not less than three months, shall be punished by a prison term of not less than 6, 12 or 16 years. The statute was enacted "because of problems of proof that can arise where the molester resides in the *225 same house as the child. Under such circumstances the child may recall she was molested repeatedly over a period of time, but may not be able to recall discrete instances with sufficient precision to prove multiple counts." (People v. Johnson (1995) 40 Cal.App.4th 24, 26, 46 Cal. Rptr.2d 838.)
Section 288.5, subdivision (c) specifically provides: "No other felony sex offense involving the same victim may be charged in the same proceeding with a charge under this section unless the other charged offense occurred outside the time period charged under this section or the other offense is charged in the alternative. A defendant may be charged with only one count under this section unless more than one victim is involved in which case a separate count may be charged for each victim."
The charging prohibition of section 288.5, subdivision (c), is clearly applicable to the present case. The "other felony offense involving the same victim" charged in count six, section 288, subdivision (b)(1), could have occurred within the same time period alleged in count one. Therefore, the information should have charged these counts "in the alternative." It did not. Further, even assuming the prosecution was not required to use the terms "in the alternative" and "or" in the information itself, at a minimum the trial court should have instructed the jury that it could convict defendant only of count one or count six, but not both. Under the circumstances, we find a violation of section 288.5, subdivision (c) as to both the charging document and the resulting convictions in counts one and six.
The sole case to consider whether a defendant may be charged with a violation of section 288.5 and a separate sex offense with the same victim within the same time period is People v. Valdez (1994) 23 Cal. App.4th 46, 28 Cal.Rptr.2d 236. In Valdez, the defendant was convicted for both continuous sex abuse of a child under the age of 14 and five lewd acts with the same child. First, the court held that the defendant was properly prosecuted for all of these offenses, under section 288.5, subdivision (c) which "explicitly permits such alternative charges." (Id. at p. 48, 28 Cal. Rptr.2d 236.) Second, it concluded that the individual crimes proscribed by section 288 were not necessarily included lesser offenses of section 288.5 and therefore the multiple convictions were proper. It reasoned, "[t]hough they are `alternative' offenses in that they may not result in double punishment, they are not `alternative' in the sense that commission of the one necessarily constitutes an acquittal of the other." (Id. at p. 49, 28 Cal.Rptr.2d 236.)
In Valdez, the prosecution may well have complied with subdivision (c) in charging the offenses "in the alternative." The opinion does not make it clear. However, if the offenses had in fact been charged in the alternative, it necessarily follows that multiple convictions would have been impermissible. Further, the fact that the other sex offenses were not lesser-included offenses to section 288.5 is irrelevant to whether multiple convictions were proper under the language of subdivision (c).
The Valdez opinion is also in error to the extent it considered the "alternative" charging requirement of section 288.5, subdivision (c) to be no more than a restatement of the double punishment prohibition in section 654. If, as section 288.5 proscribes, two sex offenses involving the same victim during the same period of time may not be charged, except in the alternative, the statute precludes the possibility of ever encountering a section 654 decision. This is because the jury should be instructed that an election must be *226 made between the two alternative charges. In the face of a choice between the alternatives, there can only be one conviction. Thus, the section 654 situation does not arise.
In support of the trial court's staying of the section 288 sex offenses pursuant to section 654, the Valdez court reasoned: "Inasmuch as the prosecution cannot know in advance which offenses will (1) prevail with the trier of fact, including the trial court sitting as a 13th juror, (2) be subsequently sustained on appeal, and (3) never be retroactively declared invalid [citation], the sentences imposed on the lesser of the `alternative' crimes should merely be stayed in accordance with the rationale long ago adopted in In re Wright (1967) 65 Cal.2d 650, 654 and footnote 4 [56 Cal. Rptr. 110, 422 P.2d 998]." (Valdez, supra, 23 Cal.App.4th at p. 49, 28 Cal.Rptr.2d 236.)
We note that Valdez was decided prior to the advent of the three strikes law. The Valdez court's reasoning appears to be based on the theory that the count stayed pursuant to section 654 should be available in case the imposed count is subsequently held invalid. However, in People v. Benson (1998) 18 Cal.4th 24, 74 Cal.Rptr.2d 294, 954 P.2d 557, our Supreme Court held that a prior conviction may be counted as a strike under section 1170.12, subdivision (b), even if sentence on the conviction was stayed pursuant to section 654. Thus, the Valdez court never contemplated that a stayed sentence might carry consequences on its own.
Section 288.5, subdivision (c) unequivocally states that two felony sex offenses involving the same victim during the same time period may not be charged, except in the alternative. The noun "alternative" is defined as "a proposition or situation offering a choice between two or more things only one of which may be chosen." (Merriam Webster's Collegiate Diet. (10th ed.1999) p. 34, emphasis added.) Consequently, the effect of section 288.5, subdivision (c) is to limit the offender's potential liability to a single count against a given victim in a given time period. (People v. Johnson, supra, 40 Cal.App.4th at p. 26, 46 Cal.Rptr.2d 838.) While a defendant may be charged and convicted in multiple counts with a violation of section 288 (40 Cal.App.4th at p. 26, 46 Cal.Rptr.2d 838), that may not occur with a violation of section 288.5 together with other felony sex offenses involving the same victim in the same charging period.
In conclusion, we find section 288.5, subdivision (c) was violated in this case. Consequently, the count six conviction must be stricken.

IV.

Sentencing Choices
At sentencing, the trial court denied probation due to the nature and seriousness of the crime, defendant's active participation, and the vulnerability of the victim. In sentencing defendant on count one, the trial court chose a full and consecutive term of 12 years under section 667.6, subdivision (c). However, the court gave no reason for its sentencing choice on count one. Relying on section 1170, subdivision (c) and People v. Belmontes (1983) 34 Cal.3d 335, 347-349, 193 Cal.Rptr. 882, 667 P.2d 686, defendant contends the court erred in failing to state reasons for its choices, and requests remand for resentencing. Recognizing that defense counsel's failure to object waives the claim on appeal (People v. Scott (1994) 9 Cal.4th 331, 352-353, 36 Cal.Rptr.2d 627, 885 P.2d 1040), defendant claims that he was deprived of effective assistance of counsel.
As previously stated, defendant must show prejudice in order to prevail on a claim of incompetence of counsel. "Prejudice is shown when there is a reasonable *227 probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." (People v. Majors (1998) 18 Cal.4th 385, 403, 75 Cal. Rptr.2d 684, 956 P.2d 1137.)
In the instant action, the probation report recommended a full consecutive sentence for count one because the three component acts of molestation "were ... separate acts between which the defendant had ample `reasonable opportunity to reflect upon his actions,' and nevertheless resumed his sexually assaultive behavior toward the child." With reference to all the counts, the probation report states that "the defendant demonstrated a high degree of callousness and lack of concern for the impact upon the victim who endured his sexual advances through the six tender and critical developmental years of eight through fourteen." Further, the report stated: "Also aggravating in this case are elements suggesting planning and premeditation including the defendant discouraging appropriate privacy, and giving the victim inappropriately large amounts of money on a daily basis."
Defendant notes that because the court imposed lesser sentences on counts six, seven and eight than those recommended by the probation report, it might not have agreed with the probation report. However, where, as here, the court disagreed on certain sentences, it may be inferred that it did agree with the recommendations it did not change. Given the negative probation report, we find it is not reasonably likely that the court would have imposed a different sentence on count one if counsel had requested the reasons for the court's sentencing choice.

DISPOSITION
The conviction on count six is stricken. In all other respects, the judgment is affirmed.
PREMO, Acting P.J., and ELIA, J., concur.
NOTES
[*] Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of parts I and II.
[1] All further statutory references are to the Penal Code unless otherwise indicated.
[2] Crystal testified that although she felt uncomfortable, she never realized the way defendant touched her was inappropriate until she took physical education in the fifth grade.
[**] See footnote *, ante.