Filed 7/3/14  P. v. Porchia CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| THE PEOPLE, | C068283 |
| Plaintiff and Respondent, | (Super. Ct. No. 10F00517) |
| v. | |
| LEROY PORCHIA, | |
| Defendant and Appellant. | |

Defendant Leroy Porchia appeals following a jury trial and conviction of possession of methamphetamine and marijuana in prison.  (Pen. Code, § 4573.6.)[1] Defendant complains the trial court (1) unnecessarily shackled him during the jury trial, (2) excluded defense evidence on prison staff as the source of the drugs, and (3) abused its discretion by declining to strike a prior conviction for purposes of three strikes sentencing (§§ 667, subds. (b)-(*i*), 1170.12).

---

[1]  Undesignated statutory references are to the Penal Code in effect at the time of defendant's crimes.

We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

### The Charged Offenses and Strike Allegations

On June 29, 2010, an information charged defendant in count two[2] with unlawful possession of methamphetamine and marijuana while he was incarcerated in state prison on or about September 23, 2009.  (§ 4573.6.)  The pleading also alleged defendant had three prior serious/violent felony convictions for purposes of three-strikes sentencing under sections 667, subdivisions (b)-(*i*) and 1170.12.  The three prior convictions were first degree burglary (§ 459), attempted robbery (§§ 664, 211), and murder (§ 187), all on October 27, 1993.[3]  The prior conviction allegations were bifurcated.

### Trial Evidence

On September 23, 2009, while defendant was incarcerated at Folsom State Prison, correctional officers conducted a cell search of defendant's cell based on a tip from a confidential informant that contraband might be there.  The officers ordered defendant and his cellmate (codefendant Johnson) out of the cell, conducted a clothed body search, and noticed a small lump in defendant's groin area.  The officers placed both inmates in handcuffs, moved the inmates away from the cell, and ordered them to remove their clothing.  One officer inspected defendant's gym shorts and found bindles tied to a string hanging inside the garment.  The officers found tissue-wrapped balloons on the codefendant.

---

[2] Count one charged a codefendant, Larry Johnson, with possession of drugs in prison, but Johnson is not a party to this appeal.

[3] Defendant's appellate brief gives a different date for the prior convictions.  However, the appellate brief refers to an original complaint, which was later amended.

Chemical tests of the contents of the bindles found on defendant revealed 0.06 gram of marijuana and 2.47 grams of methamphetamine.[4] A law enforcement narcotics expert testified these were usable amounts. The 0.06 gram of marijuana would be roughly equivalent to one-sixteenth of a sugar packet. That small an amount would "burn up before you even inhale it." However, the expert has seen marijuana joints made with as little as 0.06 gram; in prison they call it a "pinner joint" because it is mostly paper.

When asked on cross-examination how drugs get into prison, the expert testified there are numerous ways, such as visitors, mailed packages, vehicles coming into the prison, and prison staff. Marijuana has been grown in prison, but the expert was not aware of anyone growing marijuana at Folsom State Prison at that time. We discuss this cross-examination in more detail, *post*.

The defense called no witnesses. Defense counsel in closing argument to the jury suggested reasonable doubt could be found in the "absurdly small amount" of marijuana, and maybe defendant was holding the drugs for his cellmate, and it was unfair to prosecute prisoners instead of prison staff who bring contraband into the prison.

### Verdicts and Sentencing

On February 4, 2011, the jury returned a verdict finding defendant guilty of count two, possessing methamphetamine and/or marijuana in prison. On February 7, 2011, the jury found true the three prior convictions.

On May 6, 2011, the trial court sentenced defendant to a term of 25 years to life in prison under the three strikes law, to be served consecutively to the term he was already serving.

---

[4] As noted in defendant's reply brief, the People's brief mistakenly confuses an amount found on defendant with the amount found on codefendant Johnson. Tests revealed the balloons found on codefendant Johnson contained 19.1 grams of heroin, 5.89 grams of cocaine, 5.49 grams of methamphetamine, and 8.87 grams of marijuana.

## DISCUSSION

### I.  Shackling

Defendant contends the trial court shackled him in court without an adequate showing of manifest necessity.  We disagree.

### A.  Applicable Legal Principles

"The 'court has broad power to maintain courtroom security and orderly proceedings.'  [Citation.]  On appeal, its decisions on these matters are reviewed for abuse of discretion.  [Citation.]  Under California law, 'a defendant cannot be subjected to physical restraints of any kind in the courtroom while in the jury's presence, unless there is a showing of a manifest need for such restraints.'  (*People v. Duran* (1976) 16 Cal.3d 282, 290-291.)  Similarly, the federal 'Constitution forbids the use of visible shackles . . . unless that use is "justified by an essential state interest"--such as the interest in courtroom security--specific to the defendant on trial.'  (*Deck v. Missouri* (2005) 544 U.S. 622, 624 [161 L.Ed.2d 953], italics omitted.)  . . . 'In deciding whether restraints are justified, the trial court may "take into account the factors that courts have traditionally relied on in gauging potential security problems and the risk of escape at trial."  (*Deck v. Missouri, supra*, 544 U.S. at p. 629.)  These factors include evidence establishing that a defendant poses a safety risk, a flight risk, or is likely to disrupt the proceedings or otherwise engage in nonconforming behavior.'  [Citation.]  Although the court need not hold a formal hearing before imposing restraints, 'the record must show the court based its determination on facts, not rumor and innuendo.'  [Citation.]"  (*People v. Virgil* (2011) 51 Cal.4th 1210, 1270-1271.)

### B.  Background

Before jury selection, correctional officer Dora Gomez of the California Department of Corrections and Rehabilitation (CDCR) requested a security hearing and, after being sworn as a witness, stated:

"I am a transportation officer at Folsom State Prison . . . . I'm responsible for the transportation and security of inmates from Folsom State Prison to medical appointments and court proceedings.

"I appear before you today with a request to maintain restraints here on Inmate Porchia throughout this trial. The request is made for the safety of the public and all persons in this courtroom. The primary responsibility of CDCR is to protect the public, and we are the most vulnerable when we are away from the security of the prison.

"Inmate Porchia has been in custody for the following conviction: Murder in the first and received a life sentence. He is a medium security level three inmate due to his classification and placement score of 43 points. CDCR protocols dictate that Porchia is considered a high-risk transport when transporting him off prison grounds.

"Any additional prison sentence time he may receive from his current case only increases the risk that he possesses during these transports. CDCR and Folsom Prison policies procedures [*sic*] dictate that we maintain restraint here on high risk inmates at all times when transporting them off prison grounds.

"CDC [*sic*] operational manual, DOM, Section 55060, Prisoner Transport Confidential Procedure establishes the criteria for high-risk transport on several counts. This policy also dictates that all high-risk inmates shall be restrained with a waist chain, cuffs attached, and leg restraints at all times while being transported.

"Inmate Porchia has a disturbing in-prison history which includes starting from back in November of 1995 from refusing/performing work duties, um, between mutual combat in 1997; May 2001 mutual combat with use of force; July 2002 participating in riot; May 2003 resisting staff; March 2007 refusal to report to job assignment; August 2007 out of bounds;[5] August 2008 possession of contraband cell phone; . . . October

---

**5** The officer explained "out of bounds" means "Not being in his appointed area where he's supposed to be."

5

2009 distribution of controlled substance; August 2009 possession of a cell phone; March 2009 battery on an inmate, and up to today.

"I request that you, Your Honor, allow us to--the agency responsible for [defendant] to follow our department and prison procedures and retain him in restraints for the duration of the trial."[6]

The trial court expressed its inclination to shackle defendant but leave one arm free so he could write notes. Defense counsel argued the officer's testimony was "largely pro forma;" defense counsel trusted defendant to behave himself; and defendant had no incidence of violence in prison for nine years. The trial court reminded counsel that defendant committed battery on an inmate in 2009. Defense counsel reiterated he trusted defendant.

The trial court ruled, "it's not the Department of Corrections' concern about what the jury will or will not see in this case. That is clearly the Court's issue. It's not for the Department of Corrections to be concerned about that. Their issue and concern in this case is safety for not only the court staff, but also the jurors and any observers that might--may come into the courtroom. [¶] So they have done their job and [defense counsel] you've done yours. It's the Court's job, however, to consider all the arguments as well as the evidence presented by the Department of Corrections. And having done so, I think there is a manifest need for restraints with respect to [defendant]. [¶] And the Court's ruling will be that his legs will be shackled out of the presence of the jury. Also, one arm

---

[6] Defendant has not disputed any of the incidents reported by the officer. The People submitted documentary evidence--an abstract of judgment for the 1993 convictions and a CDCR Chronological History of defendant's incarceration containing handwritten notes. The dates cited in the officer's testimony match dates under the document's "Chronological Listings," with the possible exception of the November 1995 refusal to perform work duties and the August 2007 out of bounds. However, we need not disregard those two incidents, because defendant does not dispute them but instead merely argues they were inconsequential. Even if we were to disregard those two incidents, the remainder would suffice to uphold the trial court's decision.

6

will be shackled.  And if he's a right-handed or left-handed individual, whichever hand he is, I'll permit him to have that hand free so he can write notes to [defense counsel]."

The correctional officer also urged physical restraints on codefendant Johnson, citing CDCR policies and Johnson's attempted escape as a juvenile in 1988, robbery and vehicle theft in 2004 (in which Johnson beat a victim unconscious), and distributing controlled substances in 2009.  The trial court declined to order physical restraints, stating, "I would cite *People v. Duran* which holds that the imposition of physical restraints in the absence of a record showing a violence or a threat of violence or other nonconforming conduct would be deemed to constitute an abuse of discretion on my part to physically shackle him.  [¶]  And I have not heard . . . anything of that nature with respect to [codefendant] Johnson while he has been custody in the Department of Corrections.  And so for those reasons I'm not going to order the shackling of [codefendant] Johnson."

## C. Analysis

On appeal, defendant makes four points, none of which has merit.

First, he argues any reliance on CDCR security classification and operations manual is irrelevant to the "manifest need" inquiry.  Defendant cites *People v. Hill* (1998) 17 Cal.4th 800, 841, where the court held that the decision to shackle a defendant must be made by the court, not law enforcement personnel, and a trial court abuses its discretion if it abdicates this responsibility to security personnel or law enforcement.  However, the trial court indicated it was *not* relying on CDCR policies or operations, and the court's comments demonstrate the court was aware of its responsibility and applied the correct standard.  Indeed, although CDCR personnel requested codefendant Johnson be shackled, the court declined to do so on the basis that manifest need had not been shown.

Second, defendant argues many of the instances of "non-conforming conduct" were stale, going back as far as 1995.  However, that still leaves the more recent 2009 battery on an inmate, as the trial court expressly stated, as well as defendant's

7

participation in the riot in 2002. These recent matters together with the other prior prison incidents display an *ongoing* pattern of violence, disruption and nonconformance with the rules.

Third, defendant says many of the incidents were for inconsequential matters, such as possessing a cell phone, refusing work duty, resisting staff, and being out of bounds. Again, that still leaves the 2009 battery on a prison inmate, which was of consequence in and of itself, and even more so in light of defendant's long history of violence, including his mutual combat with use of force in 2001, his participation in a riot in 2002, and his commission of murder which led to his incarceration in the first place.

Lastly, defendant asserts the instances of fighting with other inmates were not sufficiently proved to amount to manifest need to shackle, because the government adduced no evidence as to whether defendant initiated the fights or "simply responded with force when attacked," which according to defendant "would not indicate aggression." Defendant adds his view that the fighting is immaterial because "It is common knowledge that fighting is endemic to prison life, prompted in part by gang rivalries and simply the need to prove oneself as tough in a prison setting. These factors do not operate in the court setting, so fighting in prison is no indicator of propensity to violence in court."

In our view, it does not matter who started the fights. The point is that defendant has shown a willingness to engage in violence and other "nonconforming behavior." (*People v. Virgil, supra*, 51 Cal.4th at pp. 1270-1271.) From this behavior in the structured, rule-oriented prison setting, one can legitimately predict his proclivity for violence and non-conformance presented a threat to courtroom security.

Defendant argues that, even if the record supports some restraint, lesser alternatives should have been considered, such as posting a bailiff near defendant or using leg shackles only, which would have been much less apparent to the jury. Defendant cites *Deck v. Missouri, supra*, 544 U.S. at pages 634-635, as stating that the

8

trial court there did not explain why, if shackles were necessary, the court chose not to provide for shackles the jury would not see. Defendant also cites *People v. Mar* (2002) 28 Cal.4th 1201, 1206, that shackling should be a last resort. However, the record shows the trial court did make the calculation that the restraint not be greater than necessary, because the court ordered that only one arm be shackled. Moreover, defendant's argument for less restraint is that there was no evidence he had assaulted or threatened any attorney or judge or other court personnel in the past. This is faint praise, since defendant had not been in a position to assault such persons, due to his incarceration.

We conclude the trial court did not abuse its discretion in shackling defendant. We therefore need not address defendant's argument that an improper ruling on shackling caused prejudice requiring reversal.[7]

## II.  Exclusion of Evidence

Defendant argues the trial court improperly excluded defense evidence about prison staff as the source of the drugs, which bore on the defense of entrapment and/or outrageous government misconduct. We disagree.

The standard of review for claims of evidentiary error is abuse of discretion. (*People v. Hovarter* (2008) 44 Cal.4th 983, 1007-1008.)

### A.  Background

The prosecution moved in limine "to exclude any questioning or testimony of the officers regarding where the drugs came from, if it came from an outside source," because whoever brought the drugs into the prison was not being prosecuted.

---

[7] We observe that, under the heading of prejudice, defendant argues that prejudice was exacerbated by the trial court's failure to instruct the jury that the use of shackles has no bearing on guilt. Defendant does not assert instructional error under a separate heading. We therefore need not consider the matter. (*People v. Turner* (1994) 8 Cal.4th 137, 214 [reviewing court may disregard claims perfunctorily asserted without development or clear indication they are intended to be discrete contentions].)

Codefendant Johnson's counsel said he assumed the concern was that somebody might ask whether prison staff bring drugs into the prison, but Johnson's counsel thought everyone knows that anyway, and he would not be going into it. Defendant's counsel said he thought it was relevant. When the trial court asked how the source of the drugs was relevant, defense counsel replied, "Um, well, gosh, if the staff brought it in, you *could perhaps argue* it was entrapment or outrageous government conduct."[8] (Italics added.)

The trial court ruled, "I think that is extremely attenuated and far afield. So I'm going to grant the People's motion. Th[ere] will be no questions concerning how the drugs got from point A to evidently point B from [*sic*] where they were located with these Defendants."

Nevertheless, defendant's trial counsel on cross-examination of the prosecution's law enforcement narcotics expert witness elicited testimony, without objection, that drugs come into prison in a variety of ways, including prison staff. The jury heard the following questions and answers on cross-examination of the expert:

"[DEFENSE COUNSEL]: You mentioned that there is an issue as to how drugs get into prisons. How do drugs get into prisons?

"[WITNESS]: They can come in through inmates' families when they're visiting. They come through packages, mail, staff, vehicles coming into the institution. There are numerous ways.

"[DEFENSE COUNSEL]: So one of the main ways that drugs come into prisons is actually through people who work in the prisons; isn't that right?

---

[8] On appeal, both sides seem to think it was codefendant's counsel who suggested entrapment or outrageous government conduct. It appears to us that it was defendant's trial counsel, Mr. Smith. But it does not matter. Neither defense counsel suggested he had any *evidence* of entrapment or outrageous government conduct or that these particular drugs came from prison staff.

10

"[WITNESS]:  I can't say that's the main way.  It's one of the ways, yes.

"[DEFENSE COUNSEL]:  And you investigate--you've investigated staff members for bringing in drugs?

"[WITNESS]:  No.  I'm not allowed to investigate staff.

"[DEFENSE COUNSEL]:  Somebody else does that?

"[WITNESS]:  Correct.

"[DEFENSE COUNSEL]:  All right.  But it is a big problem, isn't it?

"[WITNESS]:  Sure.

"[DEFENSE COUNSEL]:  That's all I have.  Thank you."

## B.  Analysis

On appeal, defendant suggests he had plans to introduce more evidence than what was elicited on cross-examination.  He says in his opening brief that the trial court apparently ruled that it was excluding the evidence based on Evidence Code section 352.[9] We disagree.  The trial court concluded that evidence of staff bringing drugs into prison was *not* relevant.

The pertinent statute is Evidence Code section 354, which states, "A verdict or finding shall not be set aside, nor shall the judgment or decision based thereon be reversed, by reason of the erroneous exclusion of evidence unless the court which passes upon the effect of the error or errors is of the opinion that the error or errors complained of resulted in a miscarriage of justice and it appears of record that:

"(a) *The substance, purpose, and relevance of the excluded evidence was made known to the court by the questions asked, an offer of proof, or by any other means*;

"(b) The rulings of the court made compliance with subdivision (a) futile; or

---

[9]  In his reply brief, defendant cites Evidence Code section 353, which is also the wrong statute, because it addresses erroneous admission of evidence.

11

"(c) The evidence was sought by questions asked during cross-examination or recross-examination." (Italics added.)

Here, the only evidence made known to the court--that prison staff sometimes brings drugs into prison--was actually introduced on cross-examination of the prosecution's narcotics expert.

Defendant argues on appeal, "It was apparent that counsel was intending to present evidence that prison officials had brought in the drugs which wound up on appellant and his co-defendant. Such evidence would present the issue of outrageous governmental conduct or entrapment. Without hearing any evidence on the matter, as through an Evidence Code section 402 hearing, the trial court ruled that such evidence was too attenuated, and ruled that it was not admissible."

However, it is *not* apparent that counsel intended to present any evidence, other than the evidence that came in on cross-examination of the expert. No offer of proof was made, there was no request for an Evidence Code section 402 hearing and there was no other indication that the defense had any other evidence on this point. From the record before us, it appears that the defense wanted to use evidence about staff bringing in contraband to float a speculative theory that the wrongdoers were the staff. Neither defense counsel said he had evidence that prison staff brought in the particular drugs found on defendant or the codefendant. Moreover, even assuming prison staff brought in the drugs that ended up in defendant's possession, that circumstance by itself would not exculpate defendant. He would still be responsible for his own misconduct in receiving and keeping the drugs, absent proof of entrapment, which was not offered.

Defendant cites federal case law that a defendant is entitled to a jury instruction on entrapment if he can present some evidence, even weak evidence, that a government agent induced him to commit a crime. (*United States v. Becerra* (9th Cir. 1993) 992 F.2d 960, 963, questioned on other grounds in *United States v. Mesa-Farias* (9th Cir. 1995) 53 F.3d 258, 259.) Defendant claims his attorney "made a colorable showing that evidence

12

pertaining to the source of the drugs would bear upon the defense of entrapment/outrageous governmental conduct." Based on our review of the record, we conclude defense counsel made no showing at all of any evidence. He simply said evidence of staff bringing drugs into prison "could perhaps" justify an *argument* of entrapment/misconduct. But it would not justify such a argument, absent evidence that a staff person *induced* defendant to receive and hold the drugs. Indeed, for entrapment, law enforcement's conduct must be such that it would likely induce a normally law-abiding person to commit the offense. (*People v. Barraza* (1979) 23 Cal.3d 675, 689-690.) On these points, no one provided an offer of proof or offered any evidence whatsoever. The failure to do so is even more telling because, in addition to a defendant's obligation to make an offer of proof pursuant to Evidence Code section 354, subdivision (a), defendant had the burden of proving entrapment by a preponderance of the evidence (*People v. McIntyre* (1990) 222 Cal.App.3d 229, 232), and still no offer of proof was made. We think it is clear, there was never any such evidence defendant was prepared to introduce.

All that the defense had was a speculative theory, and the defense was able to advance that theory in closing argument with the evidence it introduced on cross-examination of the narcotics expert.

We see no evidentiary error.

### III. Strike Convictions Arising During the Same Occurrence

Defendant argues the trial court should have stricken one of his prior "strike" convictions, because it arose from the same act as another prior strike conviction.[10] The failure to do so, according to defendant, was an abuse of discretion. We disagree.

---

[10] Defendant does not contend the trial court abused its discretion under section 1385, subdivision (a), to strike prior strike convictions pursuant to *People v. Superior Court* (*Romero*) (1996) 13 Cal.4th 497.

13

**A. Background**

As noted, defendant's strike convictions were burglary, attempted robbery and murder. Each conviction stemmed from a single occurrence.

The probation report provided scant details regarding the underlying facts of the strike offenses. The report said that police, responding to a report of a shooting, found a 27-year-old female lying in a pool of blood on a kitchen floor. Neighbors said they heard the victim arguing with males just before the shooting. The victim died as a result of a gunshot wound to the head. [11]

At sentencing, defendant asked the trial court to strike his strike convictions in the interests of justice on the ground that it is "an outrage" that prison staff "is probably responsible" for bringing the drugs into the prison. Defendant did not present the argument he now advances on appeal.

**B. Analysis**

Defendant now argues that dismissal of "one" prior conviction as committed during the same act is required under *People v. Benson* (1998) 18 Cal.4th 24 (*Benson*), and *People v. Burgos* (2004) 117 Cal.App.4th 1209 (*Burgos*). Assuming defendant has not forfeited this argument, we address defendant's argument on the merits and conclude that *Benson* actually compels the opposite result and *Burgos* is inapposite here.

Preliminarily, we observe that defendant contends only one strike conviction must be dismissed. Though defendant does not make it clear, we presume he is arguing the burglary and attempted robbery were the same act. However, even if one strike

---

[11] In orally opposing defendant's motion, the prosecution made reference to written opposition it filed, but that opposition, which may have included more details about the burglary/robbery/murder, is not part of the appellate record. The record includes only the prosecution's written opposition to Johnson's *Romero* motion. Thus, the record provides no insight into the underlying facts of defendant's strike convictions other than the nature of the charges and the above discussion in the probation report.

14

conviction were dismissed, this would still leave two prior strike convictions, making the sentence on defendant's current case a mandatory 25-year-to-life sentence.

In any event, defendant's contention that he committed a *single act* during the events resulting in his strike convictions is clearly wrong. Even on the sparse record we have concerning the facts underlying the strike priors, it is clear defendant was involved in the commission of multiple acts--entry into a residence, attempted forcible taking of property, and the shooting resulting in the death. Under these circumstances, each conviction can be counted as a strike conviction.

*Benson* is directly on point and not at all helpful to defendant. In *Benson*, the defendant had two strike convictions arising out of the same set of facts, residential burglary and assault with intent to commit murder. (*Benson*, *supra*, 18 Cal.4th at p. 26.) The trial court sentenced the defendant on the burglary, but stayed execution of the sentence on the assault pursuant to section 654.[12] (*Benson,* at p. 26.) The facts underlying the strike convictions established that the defendant committed multiple acts. After entering the victim's residence ostensibly to retrieve some keys he had left there, he stabbed her 20 times. (*Id*. at p. 27.)

Our high court in *Benson* held that each conviction qualified as a separate strike under the three strikes law, notwithstanding that the trial court stayed sentence on one of the felonies under section 654. (*Benson, supra,* 18 Cal.4th at p. 26.) Rejecting defendant's contention on appeal that the result was harsh, the Supreme Court said that, in the absence of constitutional infirmity, it was not at liberty to alter the intended effect of the three strikes law on such grounds. (*Id*. at pp. 35-36.)

---

**12** Section 654 provides, "(a) An act or omission that is punishable in different ways by different provisions of law shall be punished under the provision that provides for the longest potential term of imprisonment, but in no case shall the act or omission be punished under more than one provision. . . ."

15

In a footnote, the *Benson* court said: "Because the proper exercise of a trial court's discretion under section 1385 necessarily relates to the circumstances of a particular defendant's current and past criminal conduct, we need not and do not determine whether there are some circumstances in which two prior felony convictions are so closely connected--for example, when multiple convictions arise out of a single act by the defendant *as distinguished from multiple acts committed in an indivisible course of conduct*--that a trial court would abuse its discretion under section 1385 if it failed to strike one of the priors." (*Benson, supra,* 18 Cal.4th at p. 36, fn. 8, italics added.) Thus, the court in *Benson* recognized the distinction between multiple convictions arising out of a single act and multiple convictions arising out of multiple acts during an indivisible course of conduct. (Couzens & Bigelow, Cal. Three Strikes Sentencing (2013) p. 3.13.) "*Benson* fell into the latter category; he committed two offenses in an indivisible course of conduct." (*Ibid*.) Similarly, defendant here committed three offenses involving multiple acts during an indivisible course of conduct.

In contrast, the appellate court in *Burgos* held that the trial court abused its discretion in refusing to strike one of the defendant's two prior convictions in furtherance of justice under section 1385, because the two prior strike convictions--attempted carjacking (§ 215) and attempted robbery (§ 211)--arose from the same act, the attempted forcible taking of a vehicle, and also because section 215, subdivision (c),[13] precludes sentencing for both offenses. As to the "same act" rationale, *Burgos*, read the *Benson* footnote as "strongly indicat[ing] that where the two priors were so closely connected as to have arisen from a *single act*, it would necessarily constitute an abuse of discretion to

---

[13] Section 215, the carjacking statute, states in subdivision (c): "This section shall not be construed to supersede or affect Section 211 [robbery]. A person may be charged with a violation of this section and Section 211. However, no defendant may be punished under this section and Section 211 for the same act which constitutes a violation of both this section and Section 211."

refuse to strike one of the priors." (*Burgos, supra*, 117 Cal.App.4th at p. 1215, italics added.)[14] But here, unlike in *Burgos*, defendant's strike convictions involved multiple acts. Thus, the analysis in *Burgos* does not apply to defendant.

We conclude the trial court did not abuse its discretion in declining to strike one (or any) of defendant's prior convictions for purposes of the three strikes law. And even if it did, defendant's sentence would be the same--25 years to life.

## DISPOSITION

The judgment is affirmed.

                                                     MURRAY         , J.

We concur:

      NICHOLSON     , Acting P. J.

      BUTZ            , J.

---

[14] As defendant notes, this court reached a different conclusion in *People v. Scott*, (2009) 179 Cal.App.4th 920, a case that also involved robbery and carjacking strike convictions. Defendant asks us to overrule *Scott*. While we reaffirm this court's decision in *Scott*, we need not base our decision here on the analysis in *Scott*, because defendant committed multiple acts, not a single act.