Filed 9/30/15  P. v. Mouser CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>MICHAEL HOWARD MOUSER,<br><br>    Defendant and Appellant. | H041561<br>(Santa Clara County<br>Super. Ct. No. C1241628) |

## I.  INTRODUCTION

Defendant pleaded no contest to infliction of corporal injury on a cohabitant (Pen. Code, § 273.5, subd. (a)).[1]  He also admitted that he had three prior strikes (§§ 667, subds. (b)-(i), 1170.12) and had served a prior prison term (§ 667.5, subd. (b)).  After the trial court denied defendant's motion to strike two of his strikes pursuant to *People v. Superior Court* (*Romero*) (1996) 13 Cal.4th 497 (*Romero*), the court sentenced him to prison for 25 years to life for infliction of corporal injury, plus one year for the prior prison term enhancement.

On appeal, defendant contends the trial court abused its discretion by denying his *Romero* motion.  For reasons that we will explain, we will affirm the judgment.

---

[1] All further statutory references are to the Penal Code unless otherwise indicated.

## II. FACTUAL AND PROCEDURAL BACKGROUND

### A. *The Current Offense in 2012*[2]

Defendant and the victim had lived together off and on for 10 months. Defendant was 43 years old and the victim was 45 years old.

On September 16, 2012, the two were arguing when defendant put his arm around the victim's neck and strangled her by lifting her off the ground. The victim started to lose consciousness before defendant released her. She felt dizzy and had to hold on to something for support. The victim eventually fled but defendant followed in his vehicle. He convinced the victim to get into the vehicle and they returned to their residence.

Two days later, on September 18, 2012, the victim, defendant, and his mother were at a restaurant. After drinking a pitcher of beer and without provocation, defendant stated to the victim, "I'm going to chop you up into a million pieces." The victim feared for her life because she believed defendant had a violent history and multiple knives. When they returned to their residence, the two argued. Defendant pushed the victim on a couch and prevented her from leaving. He punched her four times in the face and once in the abdomen. Her eye was swollen shut within a few minutes. She pushed defendant and fled.

Three days later, on September 21, 2012, the victim went to the hospital due to vaginal bleeding. She believed it was caused by defendant striking her in the abdomen three days earlier. The victim had a preexisting internal injury from being stabbed. The victim believed defendant purposely struck her in the abdomen based on his awareness of her prior injury.

---

[2] As defendant was convicted by plea, the facts of the current offense are taken from the probation report, which was based on a Santa Clara police report.

On September 22, 2012, the victim reported the assaults by defendant to the police. The victim refused an emergency protective order because she did not want to wait for a judge to grant one.

## B. *The Prior Strike Offenses from 1994*[3]

Defendant's prior strikes offenses occurred in October 1994. Defendant's girlfriend at the time reported that defendant had locked the bedroom door, held a knife to her throat, and threatened to cut her throat and face. After the victim admitted having sex with a mutual friend, defendant punched her twice and kicked her in the ribs. He also grabbed her from behind and tried to suffocate her. Defendant released the victim when she started gasping for air.

Defendant next put the tip of a knife blade in her nose and stated he would "carve her up." The victim believed defendant would kill her if she did not comply with his demands. Defendant then sodomized her against her will three separate times between 1:00 a.m. and 6:00 a.m. After the third assault, defendant fell asleep and the victim contacted the police. The victim had bruising, redness, and/or swelling on her face, neck, ribs, legs, and rectum area. One of the victim's eyes was almost completely swollen shut.

Defendant first indicated that the victim's injuries were the result of them falling off a bicycle together. He then claimed the victim initiated the fights and demanded sex from him. He acknowledged that they might have had anal sex.

## C. *The Complaint and Plea*

In September 2012, defendant was charged by complaint with infliction of corporal injury on a cohabitant (§ 273.5, subd. (a)) for the September 2012 incidents. The complaint further alleged that defendant had three prior convictions for sodomy (§ 286, former subd. (c)) that qualified as strikes (§ 667, subds. (b) - (i), 1170.12) and had

---

[3] The facts of the prior offenses are taken from the probation report for the instant case, which was based on a "Presence Report" from a prior case.

3

served a prior prison term (§ 667.5, subd. (b)).  In April 2014, defendant pleaded no contest and admitted all prior allegations.

**D.  *The Romero Motion and Opposition***

Defendant filed a *Romero* motion requesting that the trial court strike two of his three strikes.  Regarding the current offense, the victim had reported that she was choked and two days later punched by defendant.  Defendant contended that the incident was a "relatively minor incident," did not involve a weapon, and did not result in serious injury to the victim.  He further argued that the offense was a non-serious and non-violent felony, and that his actions amounted to "misdemeanor conduct."  Defendant also contended that the victim did not want to be involved in the case, and that she believed it was "unfair" for defendant to face life in prison for giving her a black eye.  Defendant noted that he had entered his no-contest plea prior to trial.

Defendant contended that his three strike convictions were 20 years old and arose from a "single course of conduct" in October 1994.  Defendant was angry at his girlfriend who admitted having sex with one of his best friends.  Defendant "reacted by pulling a knife on her and then sodomizing her" three times over a five-hour period in the early morning hours.

Defendant had been diagnosed with schizophrenia and schizoaffective disorder, and had suffered from mental illness since he was a child.  Defendant contended that he had strong family support from his mother and aunt, and that he was willing to accept mental health services to avoid further criminal involvement.

The prosecution filed written opposition arguing that defendant's *Romero* motion should be denied.  According to the prosecution, defendant's current offense was similar to his prior strike convictions, because both sets of crimes were perpetrated against intimate partners and involved strangulation, punches to the face, and threats of mutilation with a knife.

4

According to the prosecution, defendant's criminal history included other offenses. He was convicted of eight misdemeanors in the eight years prior to his three strike convictions in 1995. Defendant was released from prison for his strike offenses in 2010, but he was back in custody that same year for failing to register as a sex offender. He was sentenced to county jail for the registration offense after the strikes were stricken. Defendant committed numerous parole violations and performed "equally as poor" on probation. He was on parole for his strike offense and on probation when he committed the most recent offense.

The prosecution contended that defendant was "dangerous," that his mental illness did not "mitigate" his danger, that he "failed at every opportunity" given to him by the criminal justice system, and that he was "precisely the type of person the [Three Strikes] law was meant to punish."

## E. *The Probation Report*

The probation report set forth defendant's criminal history. Prior to defendant's 1994 strike convictions, defendant was convicted of multiple misdemeanors, including hit and run, entering a noncommercial dwelling, vehicle tampering, and five convictions for driving on a suspended or revoked license.

Regarding the October 1994 incident giving rise to his strike convictions, defendant was convicted of infliction of corporal injury and three counts of sodomy by force (§§ 273.5, subd. (a), 286, former subd. (c) [now (c)(2)(A)]). Various enhancements were found true. Defendant was sentenced to 18 years in prison and was paroled in October 2010.

Defendant was thereafter convicted in June 2011 of failure to register as a sex offender (§ 290.012, subd. (a)), placed on probation, and ordered to serve time in county jail. He was subsequently convicted in January 2012 of misdemeanor possession of drug paraphernalia (Health & Saf. Code, § 11364, subd. (a)). In August 2012, defendant opted

5

into the mental health treatment court and probation was reinstated. Defendant was thus on probation while still on parole for the strike offenses.

In addition to violating parole for these offenses in 2011 and early 2012 and the current offense in September 2012, defendant also violated parole on other occasions, including by testing positive for methamphetamine, being in possession of a knife, and failing to report to the parole office. Defendant received mental health services through the parole department.

Defendant also performed poorly on probation. For example, defendant violated probation by failing to report to the probation department and failing to report a current address. Defendant's supervising probation officer believed defendant was "dangerous."

A county jail mental health official reported that defendant had "kept all of his appointments" since January 2013. Defendant had met with mental health officials on 10 occasions, and his current medications appeared to be "assisting him well."

In May 2014, the victim of defendant's most recent offense was interviewed by the probation officer. She reported that she had ended the relationship with defendant and moved away. She was still afraid of defendant and did not want him to know where she lived. Although the victim believed a 25-year-to-life sentence was "unfair" for defendant, she believed he was "capable of committing the offense again."

Defendant was interviewed by the probation officer in May 2014. Defendant was 45 years old. Regarding the prior strike offenses, which were committed in 1994 when he was 25 years old, defendant stated that he was angry at the victim because she had slept with another man and had an abortion. According to defendant, at the time of the offense the victim was on crack cocaine and he was under the influence of alcohol. They argued, the victim assaulted him, and he struck her. Defendant admitted sodomizing the victim. He stated that he felt "bad for what he did as 'she did not have it coming to her.' "

6

Regarding the most recent offense, defendant admitted to strangling the victim until she felt dizzy. He also admitted to arguing with the victim two days later and punching her four times in the face and one time in the abdomen. He denied striking her in the abdomen due to her prior injury. He expressed no remorse for the offense and referred to the victim as an alcoholic, an "assaultive person," and a "bitch."

Regarding substance abuse, defendant admitted drinking alcohol by the age of 13. As a teenager he started smoking marijuana, and by his early twenties he had used methamphetamine and crack cocaine. While in prison, he started "using every type of drug available to him, including heroin."

Defendant admitted having mental health issues. He obtained his GED in prison, and had been working as a security guard at a storage facility before being arrested for his most recent offense. Defendant believed he had served "plenty of time" for the most recent offense and indicated he would comply with any "counseling conditions."

The probation officer stated that defendant's "character and prospects appear[ed] poor." Defendant had primarily been transient with some support from his mother. He had previously received mental health counseling services, including a referral to the mental health treatment court, but the probation officer believed "the services rendered appear[ed] to have been to no avail." The probation officer found that defendant minimized his conduct in connection with the present offense. The probation officer stated that defendant appeared dangerous and appeared capable of committing another act of violence. The probation officer recommended a term of 26 years to life.

### F. *The Romero Hearing/Sentencing*

The trial court held a hearing on defendant's *Romero* motion on October 3, 2014. Defendant requested that the court reduce his conviction for infliction of corporal injury from a felony to a misdemeanor pursuant to section 17, subdivision (b). In the alternative, he requested that the court strike two of his three strikes. The prosecution contended that defendant was "not an appropriate candidate under Section 17" or

"for *Romero*," and urged the court to follow the probation officer's recommendation of 26 years to life. Defendant's mother also addressed the court. She indicated that defendant needed help with drug and mental health issues, that he was always getting "pick[ed] . . . up for something" in the last four years, and that he "really hasn't had a chance to have a life."

The trial court stated that it had reviewed defendant's motion, the prosecution's opposition, and the probation report, and that it had heard the views of defendant's mother. The court stated that the "legal standard" it was required to follow was "whether in light of the nature and circumstances of the defendant's present felony conviction and the circumstances and nature of his prior felony and misdemeanor convictions and in the particulars of his background, his character, and prospects that [the court] make a finding that when the [L]egislature passed the [T]hree [S]trikes law that this situation was never contemplated and that therefore it's appropriate for [the court] to exercise [its] discretion and strike one or more of the strike priors. [¶] And so what I need to consider is whether the facts and circumstances of this case are so unique and so unusual that they weren't contemplated by the [L]egislature and that in the interest of justice it's absolutely necessary for me to exercise my discretion and depart from the [L]egislature's mandate in the [T]hree [S]trikes law."

The trial court first considered the current offense. The court explained that the offense involved defendant strangling the victim until she began to lose consciousness, was dizzy, and needed support to stand. The victim was concerned for her life and ran away. Two days later, defendant stated he was going to "chop [the victim] up into a million pieces." He later punched her four times in the face and once in the stomach. The victim again fled. Her eye was swollen shut and she later went to the hospital due to vaginal bleeding. The court stated, "I don't have a doubt that this is felony conduct," and denied defendant's request to reduce the offense to a misdemeanor. The court characterized strangulation as a "serious matter all by itself" and believed that it was a

8

"sign that the defendant has a serious disregard for life." The court also observed that some aspects of the current offense were "very similar" to his conduct in the strike offenses.

Regarding the strike offenses, the trial court recognized that they occurred "further in the past" in October 1994. The court summarized the underlying incident, including defendant putting a knife to the victim twice and threatening to cut and carve her; defendant punching, kicking, and trying to suffocate the victim; and defendant sodomizing her three times within a five-hour period. The court also summarized the victim's extensive injuries, including bruising and swelling on various parts of her face and body.

The trial court observed that defendant "didn't dispute the core conduct in either the current offense or the prior offense" when he met with the probation officer. Defendant had also told the probation officer that he felt bad regarding the prior offense because the victim "didn't have it coming to her."

Regarding the victim of the current offense, the trial court indicated that she "was a mess" during the preliminary examination and had given "evasive" testimony. After a bench conference at the preliminary examination, the court ultimately referred the victim to "Next Door Solutions" to talk with a counselor. When the victim later came back to court, defendant pleaded no contest. The court observed that the victim ultimately described the offense to the probation officer.

The trial court next considered whether there was a "washing out period" between the strike offenses and the current offense. The court observed that defendant was released on parole in October 2010 and "almost immediately" accrued numerous parole violations. Within two months he had committed a felony by failing to register as a sex offender, less than a year later he tested positive for methamphetamine, a few months later he was in possession of a knife and drug paraphernalia which resulted in him pleading to a misdemeanor Health and Safety Code violation, he later failed to report to

9

the parole office, he failed a drug test and failed to register, and then he committed the present offense.  The court determined there was "no washing out period," and believed that the commission of the felony and misdemeanor offenses "just over a year" after being released from prison was a "significant" factor.  The court also observed that defendant "was offered everything our court could give him with respect to mental health treatment and for whatever reason it didn't seem to make a difference in his conduct."

The trial court observed that defendant was 43 years old at the time of the current offense.  The court believed that defendant's case did not involve someone who had made a "youthful mistake," served a significant prison sentence, had overcome the "youthful mistake," and had "been able to be released to society without great risk."

The trial court further observed that the probation report was "exceptionally pessimistic" about defendant's prospects.  Although defendant's mother was "on his side doing everything she can," defendant had "few job prospects" and "had a hard time holding down a job."

The trial court indicated that it had also "spent a lot of time thinking about . . . [defendant's] mental health and how to approach that" issue.  Further, the court indicated that it had considered defendant's entry of a plea before the preliminary examination was completed; his participation in several programs while incarcerated, including programs regarding alcohol and drugs, domestic violence, anger management, and sex offenders; and that his strike offenses occurred within a five-hour period rather than separated by days or more.

The trial court also made reference to various individuals' observations of defendant.  For example, the victim of defendant's current offense believed he was capable of committing the offense again, and she remained "hiding in another county."  The probation officer who had been supervising defendant stated that defendant did not comply with probation, did not live with his mother as he had claimed, and was primarily transient.  The probation officer further believed that defendant was dangerous and not an

10

appropriate candidate for further probation services. Similarly, the probation officer who prepared the probation report stated that defendant appeared dangerous and capable of committing another act of violence.

The trial court then concluded: "So after both reviewing and thinking carefully about the factors that I'm required to consider, I have concluded that the law compels me to deny the *Romero* [m]otion and accede to our [L]egislature's judgment that the current and past crimes require a lengthy prison sentence. I thought hard about this. It's an incredibly hard decision, and it's made harder by the fact that the defendant's mental health conditions and his overall circumstances in life make this seem unusually harsh, but it just doesn't – isn't a situation where the [L]egislature and the other courts – the higher courts have given me the freedom to give what I think might be the right sentence. I have no choice under the law but to give him the life sentence that the [T]hree [S]trike law requires."

The trial court subsequently sentenced defendant to prison for 25 years to life for infliction of corporal injury on a cohabitant, plus one year for the prior prison term enhancement.

### III. DISCUSSION

Defendant contends that the trial court "was not aware it had the discretion to grant the motion" and that "[t]his failure to exercise discretion is reversible error."

" '[A] trial court may strike or vacate an allegation or finding under the Three Strikes law that a defendant has previously been convicted of a serious and/or violent felony, on its own motion, "in furtherance of justice" pursuant to . . . section 1385[, subdivision] (a).' [Citation.]" (*People v. Carmony* (2004) 33 Cal.4th 367, 373 (*Carmony*).) A court's decision whether to strike a qualifying prior conviction is discretionary. (*Id.* at p. 375.)

However, " '[t]he Three Strikes initiative, as well as the legislative act embodying its terms, was intended to restrict courts' discretion in sentencing repeat offenders.'

11

[Citation.]  To achieve this end, 'the Three Strikes law does not offer a discretionary sentencing choice, as do other sentencing laws, but establishes a sentencing requirement to be applied in every case where the defendant has at least one qualifying strike, unless the sentencing court "conclud[es] than an exception to the scheme should be made because, for articulable reasons which can withstand scrutiny for abuse, this defendant should be treated as though he actually fell outside the Three Strikes scheme." ' [Citation.]" (*Carmony*, *supra*, 33 Cal.4th at p. 377.)  In order to determine whether an exception to the Three Strikes law should be made, " 'the court in question must consider whether, in light of the nature and circumstances of [the defendant's] present felonies and prior serious and/or violent felony convictions, and the particulars of [the defendant's] background, character, and prospects, the defendant may be deemed outside the scheme's spirit, in whole or in part, and hence should be treated as though [the defendant] had not previously been convicted of one or more serious and/or violent felonies.' [Citation.]" (*Carmony*, *supra*, at p. 377.)

"[A] trial court's refusal or failure to dismiss or strike a prior conviction allegation under section 1385 is subject to review for abuse of discretion." (*Carmony*, *supra*, 33 Cal.4th at p. 375.)  "In reviewing for abuse of discretion, we are guided by two fundamental precepts.  First, ' "[t]he burden is on the party attacking the sentence to clearly show that the sentencing decision was irrational or arbitrary.  [Citation.]  In the absence of such a showing, the trial court is presumed to have acted to achieve legitimate sentencing objectives, and its discretionary determination to impose a particular sentence will not be set aside on review." ' [Citations.]  Second, a ' "decision will not be reversed merely because reasonable people might disagree.  'An appellate tribunal is neither authorized nor warranted in substituting its judgment for the judgment of the trial judge.' " ' [Citations.]  Taken together, these precepts establish that a trial court does not abuse its discretion unless its decision is so irrational or arbitrary that no reasonable person could agree with it." (*Id*. at pp. 376-377.)

12

"[A] trial court will only abuse its discretion in failing to strike a prior felony conviction allegation in limited circumstances. For example, an abuse of discretion occurs where the trial court was not 'aware of its discretion' to dismiss [citation], or where the court considered impermissible factors in declining to dismiss [citation]." (*Carmony*, *supra*, 33 Cal.4th at p. 378.) "But '[i]t is not enough to show that reasonable people might disagree about whether to strike one or more' prior conviction allegations. [Citation.] Where the record is silent [citation], or '[w]here the record demonstrates that the trial court balanced the relevant facts and reached an impartial decision in conformity with the spirit of the law, we shall affirm the trial court's ruling, even if we might have ruled differently in the first instance' [citation]. Because the circumstances must be 'extraordinary . . . by which a career criminal can be deemed to fall outside the spirit of the very scheme within which he squarely falls once he commits a strike as part of a long and continuous criminal record, the continuation of which the law was meant to attack' [citation], the circumstances where no reasonable people could disagree that the criminal falls outside the spirit of the three strikes scheme must be even more extraordinary." (*Ibid.*)

In this case, in denying the *Romero* motion, the record reflects that the trial court carefully considered all the relevant factors, including the nature and circumstances of defendant's past and present offenses, and his background, character, and prospects. We do not believe the trial court abused its discretion in denying the motion in view of those factors. For example, the circumstances of defendant's current offense included strangling the victim until she began to lose consciousness and punching her repeatedly. In denying defendant's request to reduce the offense to a misdemeanor, the court stated, "I don't have a doubt that this is felony conduct." The court further stated that the strangulation was a "serious matter all by itself" and believed that it was a "sign that the defendant has a serious disregard for life." The court also observed that some aspects of the current offense were "very similar" to his conduct in the strike offenses. Defendant's

13

prior conduct included punching and kicking a different victim, trying to suffocate her, and repeatedly sodomizing her. Defendant also committed criminal conduct between the current offense and the strike offenses. The court further observed that the probation report was "exceptionally pessimistic" about defendant's prospects, and that the victim of defendant's current offense, his supervising probation officer, and the probation officer who prepared the report all believed defendant was capable of committing another act of violence.

On appeal, defendant first contends that the trial court erroneously believed it had no discretion to grant the *Romero* motion. In support of this contention, defendant refers to the following statements by the court: "[A]fter both reviewing and thinking carefully about the factors that I'm required to consider, I have concluded that the law compels me to deny the *Romero* [m]otion and accede to our [L]egislature's judgment that the current and past crimes require a lengthy prison sentence. I thought hard about this. It's an incredibly hard decision, and it's made harder by the fact that the defendant's mental health conditions and his overall circumstances in life make this seem unusually harsh, but it just doesn't – isn't a situation where the [L]egislature and the other courts – the higher courts have given me the freedom to give what I think might be the right sentence. I have no choice under the law but to give him the life sentence that the [T]hree [S]trike law requires."

We do not believe the trial court was under the misimpression that it had no discretion to grant defendant's *Romero* motion. At the outset of its ruling on defendant's motion, the court indicated that it had to determine whether "it's appropriate for me to exercise my discretion and strike one or more of the strike priors." The court subsequently engaged in an extensive discussion of the factors relevant to a determination of whether to strike any of defendant's qualifying prior convictions. In view of that extensive discussion regarding the factors relevant to ruling on defendant's *Romero* motion, we believe the court's subsequent statements cited by defendant, including that

14

the court was compelled to deny the motion, that it had no freedom to give a different sentence, and that it had no choice, were properly based on the court's reasoned determination that, in view of the relevant factors as applied to defendant's case, " ' "this defendant should [not] be treated as though he . . . fell outside the Three Strikes scheme" ' " (*Carmony*, *supra*, 33 Cal.4th at p. 377) and the law required that the motion be denied. The court's determination in this regard was not an abuse of discretion.

Second, defendant contends that certain statements by the trial court at the outset of its ruling reflect the court's misunderstanding of the proper legal standards for a *Romero* motion and the court's application of "an impossibly high burden of proof in [defendant's] case."

At the outset of its ruling the court stated: "The legal standard that I'm required to follow is whether in light of the nature and circumstances of the defendant's present felony conviction and the circumstances and nature of his prior felony and misdemeanor convictions and in the particulars of his background, his character, and prospects that [the court] make a finding that when the [L]egislature passed the [T]hree [S]trikes law that this situation was never contemplated and that therefore it's appropriate for [the court] to exercise [its] discretion and strike one or more of the strike priors. [¶] And so what I need to consider is whether the facts and circumstances of this case are so unique and so unusual that they weren't contemplated by the [L]egislature and that in the interest of justice it's absolutely necessary for me to exercise my discretion and depart from the [L]egislature's mandate in the [T]hree [S]trikes law."

Based on our careful review of the record, we believe the trial court was well aware of the applicable legal standard in ruling on defendant's *Romero* motion, and we have no doubt that the court applied that standard in this case. The court's statements at issue fairly reflect the proposition that, in order for the court to grant defendant's motion, the court had to " 'consider whether, in light of the nature and circumstances of [the defendant's] present felonies and prior serious and/or violent felony convictions, and the

15

particulars of [the defendant's] background, character, and prospects, the defendant may be deemed outside the scheme's spirit, in whole or in part, and hence should be treated as though [the defendant] had not previously been convicted of one or more serious and/or violent felonies.' [Citation.]" (*Carmony*, *supra*, 33 Cal.4th at p. 377.) For a *Romero* motion to be granted, the circumstance must be "extraordinary" for a defendant to "be deemed to fall outside the spirit of the very scheme within which he squarely falls once he commits a strike as part of a long and continuous criminal record, the continuation of which the law was meant to attack." (*People v. Strong* (2001) 87 Cal.App.4th 328, 338; see *Carmony*, *supra*, at p. 378.) We do not believe the court's statements reflect its application of a different legal standard or its application of an incorrect burden on defendant.

Third, defendant contends that the trial court erred by failing to "fully consider that the three strikes resulted from events occurring on one occasion, with one victim." Citing *People v. Vargas* (2014) 59 Cal.4th 635 (*Vargas*), defendant contends that, because of this circumstance concerning the prior strikes, he "falls outside the spirit of the three strikes law."

In *Vargas*, the defendant's two prior felony convictions for robbery and carjacking "were based on the same act, committed at the same time, against the same victim." (*Vargas*, *supra*, 59 Cal.4th at p. 638.) Specifically, "the same act" underlying the two convictions was the defendant "forcibly taking the victim's car." (*Id.* at p. 645.) The California Supreme Court held that "treating them as separate strikes [was] inconsistent with the spirit of the Three Strikes law, and the trial court should have dismissed one of them and sentenced defendant as if she had only one, not two, qualifying strike convictions." (*Id.* at p. 639.)

In contrast to *Vargas*, defendant's three prior strike convictions arose out of three separate acts of sodomy, not a single act as in *Vargas*. Accordingly, the trial court in this case was not required to strike any of defendant's strike convictions under a single act

16

theory. (Cf. *People v. Benson* (1988) 18 Cal.4th 24, 26 (*Benson*) ["when a court has stayed sentence on an otherwise qualifying conviction under section 654, the stayed conviction may be treated as a strike"]; *Vargas*, *supra*, 59 Cal.4th at p. 638 [explaining that in *Benson*, the defendant's prior two crimes "could not be separately punished at the time they were adjudicated because they were committed during the same course of conduct (§ 654)," but that "such close factual and temporal connection did not prevent the trial court from later treating the two convictions as separate strikes when the accused reoffended"].)

Moreover, the record reflects that the trial court in this case did consider the circumstances of the prior qualifying convictions. In explaining its ruling, the court stated: "[Defense counsel] you pointed out that his strike priors occurred within a 5-hour period. . . . So that's something else that I've had to carefully think through." The court also determined that there was "no washing out period" between the strike offenses and the current offense in view of defendant's intervening behavior. After carefully considering all the other relevant factors, the court ultimately denied defendant's *Romero* motion. Defendant fails to demonstrate an abuse of discretion.

In sum, the record reflects that the trial court understood the applicable legal principles and considered the relevant factors in deciding whether to exercise its discretion and grant *Romero* relief. Defendant fails to establish that the court abused its discretion by denying his *Romero* motion.

## IV.  DISPOSITION

The judgment is affirmed.

_____
BAMATTRE-MANOUKIAN, ACTING P. J.

WE CONCUR:

_____
MIHARA, J.

_____
GROVER, J.

*People v. Mouser*
**H041561**