Filed 2/23/26  P. v. Leon CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE, | D084520 |
| Plaintiff and Respondent, | |
| v. | (Super. Ct. No. SCN447261) |
| ZAHIR VLADIMIR LEON, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of San Diego County, Sim von Kalinowski, Judge.  Affirmed.

Matthew Aaron Lopas, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Charles C. Ragland, Chief Assistant Attorney General, Arlene A. Sevidal, Assistant Attorney General, Collette C. Cavalier, Emily Reeves and Kristine A. Gutierrez, Deputy Attorneys General, for Plaintiff and Respondent.

## INTRODUCTION

Zahir Vladimir Leon appeals from his judgment and Three Strikes sentence of 25 years to life for assault by means likely to produce great bodily injury (Pen. Code,[1] § 245, subd. (a)(4)). The two strike priors are convictions for assault with a deadly weapon with gang and great bodily injury enhancements, arising from an incident in which Leon stabbed two victims with a knife. He asserts (1) our reversal of a great bodily injury enhancement attached to one of the strike priors and remand for full resentencing, in a prior unrelated appeal, is a circumstance warranting remand for full resentencing in this case; and (2) the sentencing court erred in its determination that the two prior convictions for assault with a deadly qualified as two separate strikes. We disagree with both contentions and affirm.

---

[1] Undesignated statutory references are to the Penal Code.

# BACKGROUND

## I.

### *Conviction Offenses*

In June 2023, pending sentencing in case SCN407998, Leon was incarcerated at the Vista Detention Facility and housed in module four of the upper west house. The upper west house comprised six modules, each with 16 cells, and housed a total of 32 inmates, two per cell. A little after 9:00 a.m., while all cells were unlocked and the inmates were in the dayroom, a fight broke out. Sheriff's deputies entered the module and found Leon and two other inmates, A. Chavez and G. Anderson, fighting in front of Leon's cell.

Leon told deputies he was in the dayroom and approached Anderson to ask for the newspaper. Anderson, who had been holding onto the newspaper "a long time," refused. Leon grabbed the newspaper from Anderson and went to his cell. Anderson followed. After initially refusing Leon's request to leave his cell, Anderson walked out, turned and "rushed" towards Leon. Leon then rushed towards Anderson, threw the first punch and kicked him in the head.

The fight was recorded by video cameras in the module. The video showed Anderson did not have a weapon or contraband. It showed Leon threw the first punch. Then in an assault that lasted "over 30 seconds" and joined by Chavez, Leon inflicted approximately 14 kicks and 35 punches to Anderson.

Anderson went to the medical ward. Photographs of Anderson's injuries were admitted into evidence. A deputy sheriff testified the photographs showed Anderson with "some bruising in the forehead and temple area," "some sort of laceration or cut above the left eyebrow," and

"some sort of blood or laceration in the back of the head," "some blood" and "some bruising" to the right arm and elbow area.

In another incident in July 2023, a deputy sheriff was escorting Leon out of an isolation cell, where he was serving time in a disciplinary action, back to his module when Leon turned to his left, "made some type of gargling sound as if [he] were having mucus or a lot of saliva in [his] throat," and spat on the deputy's face.

In May 2024, a jury convicted Leon in count 1 with assault by means likely to produce great bodily injury against Anderson (§ 245, subd. (a)(4)) and found true the allegation he intended to cause great bodily injury (§§ 667, subd. (e)(2)(C)(iii) and 1170.12, subd. (c)(2)(C)(iii)) and, in count 2, with misdemeanor battery against the deputy sheriff (§ 242), a lesser included offense of battery by gassing (§ 243.9, subd. (a)).

Following the jury's verdicts, Leon admitted he had suffered two strike prior convictions from case SCN407998, having been found guilty by a jury in April 2022 of two counts of assault with a deadly weapon (§ 245, subd. (a)(1)) against two different victims, each with true findings that he committed the offenses with great bodily injury (§ 12022.7, subd. (a)) and for the benefit of a criminal street gang (§ 186.22, subd. (b)(1)).[2]

---

[2]   Both parties have relied on our prior unpublished opinion in *People v. Leon* (Nov. 21, 2025, D084519) in their briefing on appeal. Thus, on our own motion, after notice was provided to the parties and no objection was filed, we take judicial notice of the record on appeal of the judgment and sentence in case SCN407998, our case D084519. (Evid. Code, §§ 452, subd. (d), 459, subds. (a), (d).)

## II.

### *Sentencing in Case SCN407998*

On June 12, 2024, Judge Kelly Mok, who had presided over the jury trial in case SCN407998, sentenced Leon to a total term of 14 years. In selecting consecutive terms for the two counts of assault with a deadly weapon, Judge Mok found "[e]ach victim was stabbed with a knife and constitutes a separate act." On the first assault count, the court imposed the upper term of four years, plus three years for the great bodily injury enhancement and five years for the gang enhancement, for a total of 12 years. On the second assault count, the court imposed a consecutive term of one year (one-third the middle term) and another one year for the great bodily injury enhancement, for a total of 2 years. The court struck punishment for the gang enhancement on the second assault count pursuant to section 1385, subdivision (a)(1).[3]

On July 15, 2024, Leon appealed the judgment and sentence in case SCN407998.

## III.

### *Sentencing in This Case*

On July 12, 2024, Leon was sentenced in the instant case for the assault on the inmate and battery on the deputy sheriff. The trial court (Judge Sim von Kalinowski) denied Leon's *Romero*[4] motion to dismiss one or both strike priors. Accordingly, the trial court sentenced Leon to 25 years to life on count 1 for assault by means likely to produce great bodily injury,

---

[3]    The court also imposed a concurrent middle term of two years on a third count of carrying a concealed dirk or dagger (§ 21310).

[4]    *People v. Superior Court (Romero)* (1996) 13 Cal.4th 497.

5

consecutive to the 14-year sentence imposed in case SCN407998. Leon was given credit for time served on the misdemeanor battery in count 2. The court also specifically declined to resentence and modify the sentencing in case SCN407998, stating "to the extent the [c]ourt may have any discretion to modify any of this sentencing in [c]ase [SCN]407998, if it does have such discretion, it would be my authority to decline to do so."

On July 15, 2024, Leon appealed this judgment and Three Strike sentence. In May 2025, appointed counsel filed an appellant opening brief pursuant to *People v. Wende* (1979) 25 Cal.3d 436, raising no arguable issues for reversal or modification of the judgment.

IV.

*Post-Sentencing Events*

On November 21, 2025, in an unpublished opinion in the appeal of case SCN407998, this court reversed one of the great bodily injury enhancements under section 12022.7, subdivision (a), for insufficient evidence. Accordingly, we struck the one year imposed for the enhancement and remanded the matter to the trial court for a full resentencing to allow it to consider the changed circumstance. In all other respects, we affirmed the judgment. (*People v. Leon*, *supra*, D084519.)

We then requested, and the parties filed, supplemental briefs on (1) what impact, if any, does our decision remanding case SCN407998 have on the sentence in this appeal; and (2) whether our decision remanding case SCN407998 for full resentencing requires resentencing in this matter as well.

On December 15, 2025, the California Supreme Court decided *People v. Shaw* (2025) 18 Cal.5th 1089, 1093, 1103 (*Shaw*) holding a single act that harms two victims may not be treated as two strikes for purposes of Three Strikes sentencing. Based on this new authority, Leon's appointed counsel

6

requested that we strike his *Wende* opening brief and grant him permission to file a new opening brief to raise a claim of error under *Shaw*. We denied the request because the People had already filed their respondent's brief. However, we permitted, and the parties filed, simultaneous letter briefs to address whether the sentencing court properly denied Leon's *Romero* motion under *Shaw*.

## DISCUSSION

### I.

### *Remand Is Not Warranted*

Leon argues the reversal of a great bodily injury enhancement in case SCN407998 warrants a remand for full resentencing in this case. We disagree.

At the outset, the two prior felony convictions for assault with a deadly weapon (§ 245, subd. (a)(1)) remain valid strike priors despite reversal of one great bodily injury enhancement. (§ 1192.7, subd. (c)(23) [a " 'serious felony' " for purposes of Three Strikes sentencing includes "any felony in which the defendant personally used a dangerous or deadly weapon"].) Leon concedes as much.

Leon argues, however, the strike priors "have now been sufficiently changed" by the reversal of the great bodily injury enhancement, for three reasons. We are persuaded by none.

First, he asserts he was sentenced to a single aggregate term for both cases and thus the trial court here, as the last sentencing court, must consider both this case and case SCN407998 "in order to effectuate" sections 669 and 1170.1." This is incorrect. The scheme providing for calculation of an aggregate term of imprisonment as the sum of the principal term, subordinate term and applicable enhancements for multiple convictions,

7

whether arising in the same or different cases, does not apply here (see §§ 1168, subd. (b) [distinguishing determinate and indeterminate sentences], 1170 [determinate sentencing in general], 1170.1 [aggravation of determinate terms], 669 [no aggravation of indeterminate terms]) because Leon was not sentenced to a single aggregate term under section 1170.1. He was sentenced separately by two different judges resulting in a determinate term of 14 years in case SCN407998 and a consecutive indeterminate term of 25 years to life in this case. (See § 1170.12, subd. (c)(2)(B) [if the current felony is being sentenced as a third strike offense, the sentence must be imposed consecutively to any other term being served].) We thus agree with the Attorney General full resentencing in this case is not required for this asserted reason.

Second, Leon argues in denying the *Romero* motion, the sentencing court considered both strike convictions "as if the [underlying] conduct resulted in great bodily injury" to both victims. The court did remark that the prior strikes involved "assault with a knife causing great bodily injury against two individuals," but this was not the entirety nor the focus of the court's assessment. Rather, the court determined Leon was not outside the spirit of the Three Strikes sentencing scheme after careful consideration of the totality of the circumstances, including evidence Leon proffered in mitigation, pursuant to *People v. Carmony* (2004) 33 Cal.4th 367.

Evaluating the nature and circumstances of the third strike offense, the court found it involved a violent assault with force likely to cause great bodily injury; it was "more serious than typical" because it occurred while Leon was incarcerated awaiting sentencing on strike priors, the jury found he had the specific intent to cause great bodily injury, and evidence showed Leon "individually punched the victim 35 times and kicked him 14 times"; it was

8

similar to the two strike priors because it involved "a significant degree of violence"; and there was no evidence Leon was mentally impaired at the time of the third strike offense. Considering the nature and circumstances of the strike priors, the court found they were not remote and involved violence and use of a weapon. The court also considered that Leon was out on bail for the strike priors when he was (1) arrested and subsequently convicted for carrying a concealed knife, and (2) committed an assault with a deadly weapon "again with a knife" against his mother and "threatened to kill her when she confronted him about inappropriately sexually-related conduct towards his 16-year-old sister."[5] Further still, the court found Leon had a "significant history of violence as a juvenile, from when he was 13 [until] release from the California Youth Authority commitment when he turned 20, and a history of violence subsequent to the strikes." The court found his adult criminal history showed "the severity of violence is increasing." Based on this record, we agree with the Attorney General the court's decision to sentence Leon to 25 years to life was "not contingent" on the great bodily injury findings.

Third, Leon argues the court in resentencing him in case SCN407998 *might* reduce the assault count with the vacated great bodily injury enhancement to a misdemeanor pursuant to section 17, subdivision (b), which would then eliminate a strike prior. This is speculative and premature. If the court in case SCN407998 significantly alters his sentence on remand following reversal of the great bodily injury enhancement, Leon may seek

---

[5] Charges arising from this incident were dismissed with a *Harvey* waiver when Leon was convicted of the third strike offense. (See *People v. Harvey* (1979) 25 Cal.3d 754.)

9

relief by way of a habeas petition for resentencing in the instant case. (See *People v. Reyes* (2016) 3 Cal.App.5th 1222, 1227.)

II.

*No Error in Denial of Romero Motion*

Relying on *Shaw, supra,* 18 Cal.5th 1089, Leon argues the trial court erred in its determination that his two prior felony convictions for assault with a deadly weapon qualified as two separate strikes. We disagree and thus reject his request to remand for resentencing on this additional basis.

The question before our Supreme Court in *Shaw* was "how to count the number of strikes when *a single criminal act* has resulted in multiple prior felony convictions." (*Shaw, supra,* 18 Cal.5th at p. 1093, italics added.) In answering this question, the court retraced three prior decisions: *People v. Fuhrman* (1997) 16 Cal.4th 930 (*Fuhrman*), *People v. Benson* (1998) 18 Cal.4th 24 (*Benson*), and *People v. Vargas* (2014) 59 Cal.4th 635 (*Vargas*).

In *Fuhrman,* the defendant sustained multiple convictions when he, while driving a stolen car, collided with another vehicle; brandished a handgun when the victim of the collision stated her intent to call the police; forced his way at gunpoint into a truck that had stopped because of the collision; and ordered the driver of the truck to take him from the scene. (*Shaw, supra,* 18 Cal.5th at p. 1167, citing *Fuhrman, supra,* 16 Cal.4th at p. 935.) He argued his multiple convictions "stemming from this series of events" should not be counted as multiple strikes because the charges had been brought and tried together, rather than separately. (*Shaw,* at p. 1096.) The court rejected the argument as contrary to the plain language of the Three Strikes law. (*Shaw,* at p. 1096, citing *Fuhrman,* at pp. 938–940 .)

In *Benson,* the high court addressed "whether the statute permits 'separate strikes to be imposed for offenses that in a prior proceeding were

10

determined to have been committed as part of an indivisible transaction, and as to which it was concluded that imposition of separate punishment for each offense would constitute multiple punishment proscribed by [Penal Code] section 654.' " (*Shaw*, *supra*, 18 Cal.5th at p. 1096.) The court in *Benson* held, "crimes that were 'sustained in one action and ar[ose] out of the same set of facts' qualify as separate strikes within the meaning of the [Three Strikes] statute, even if the crimes were so closely connected that they could not be separately punished at the time they were adjudicated." (*Shaw*, at pp. 1096–1097, quoting *Benson*, *supra*, 18 Cal.4th at p. 26.) In *Benson*, "the defendant had suffered two prior convictions for residential burglary and assault with intent to commit murder, which arose from an incident in which he unlawfully entered his neighbor's apartment and then stabbed her." (*Shaw*, at p. 1096.)

In *Vargas*, the high court addressed the question left open in *Benson*: "How should multiple convictions be treated when they stem not just from a single criminal proceeding (*Fuhrman*) or a single indivisible course of conduct (*Benson*), but from a single act?" (*Shaw*, *supra*, 18 Cal.5th at p. 1097.) The court in *Vargas* held, "two prior convictions arising out of *a single act against a single victim* may not be treated as two strikes for purposes of Three Strikes sentencing." (*Shaw*, at p. 1093, italics added.) When " 'faced with two prior strike convictions based on the same act,' the trial court [is] '*required* to dismiss one of them.' " (*Shaw*, at p. 1097, quoting *Vargas*, *supra*, 59 Cal.4th at p. 640.) The court explained in *Vargas* that "when a defendant's 'two strikes *[are] based on the same act . . .* no reasonable person would disagree that [the] defendant fell outside the spirit of the Three Strikes law'—specifically, its provisions prescribing indeterminate life sentences for persons with two prior strikes." (*Shaw*, at p. 1099, quoting *Vargas*, at

11

p. 642.) The defendant in *Vargas* suffered two prior strikes based on convictions for robbery and carjacking, " 'based on the same act of taking the victim's car by force.' " (*Shaw*, at p. 1097, quoting *Vargas*, at p. 640.)

This takes us to *Shaw*. There, our high court clarified that under the *Vargas* rule, "a single act that harms *two* victims" may also not be treated as two strikes for purposes of Three Strikes sentencing. (*Shaw*, *supra*, 18 Cal.5th at p. 1093.) In *Shaw*, the defendant's two prior strike convictions for gross vehicular manslaughter while intoxicated "stemmed from a 2002 incident in which Shaw drove under the influence, ran a red light, and struck a car with three occupants, killing two of them." (*Id.* at p. 1094.)

The *Vargas* rule, as clarified by *Shaw*, does not apply to Leon. Leon's two felony convictions for assault with a deadly weapon are *not* based on multiple convictions arising from *a single act* against the same victim (*Vargas*), or from *a single act* against multiple victims (*Shaw*). Both Judge Mok and Judge von Kalinowski found Leon committed *two separate acts* of stabbing against two different victims. The record supports their findings.

As we stated in our prior unpublished opinion in *People v. Leon*, *supra*, D084519, the record evidence showed: "On November 17, 2019, around 5:30 p.m., L. Avila pulled into the driveway of her Oceanside home with her two young children in the car. O. Martinez, the children's father, and A. Moreno were standing near the driveway. Avila got out when 'out of nowhere,' Leon came around the corner saying, 'Fuck Mesa' to Martinez and Moreno. . . . [¶] Leon ran up, '[w]aving his arms around' and 'moving them downwards in a striking motion.' He chased Martinez and Moreno down the street and they 'started fighting.' Avila saw Leon had a knife. She took her children inside the house and quickly went back outside. By then Martinez and Moreno were running back to the house, 'saying that they were bleeding.'

12

Martinez told her he had been stabbed in the shoulder. Both men were later treated at the hospital. . . . Martinez had 'a little wound' to his back left shoulder area and Moreno had 'a little wound behind his back.' "

Leon contends, however, "there is no indication in the record whether the wounds to the two victims were the result of one or more stabbing motions," and thus "it cannot be said without speculation that [he] separately stabbed each victim in the prior incident." We disagree. As we further noted in our prior opinion, the medical records revealed Moreno suffered a "puncture wound" described as a " '2 cm laceration to [the] left mid back,' " and Martinez suffered a " '3 cm laceration' to the left shoulder requiring six sutures.' " (*People v. Leon, supra,* D084519.) Although we concluded there was insufficient evidence to support a great bodily injury enhancement as to Moreno, based on the medical records' description of his injury as a " 'superficial laceration' " (*People v. Leon, supra,* D084519), the nature and location of the puncture wound inflicted on each victim reasonably supports they are the result of two separate acts of stabbing.

We also disagree with Leon's characterization that Judge von Kalinowski "imported an incorrect legal standard" to decide the *Romero* motion when the court, in Leon's words, concluded, "when there are two victims there are two strikes for sentencing purposes." The court did not say this, nor did it conclude two victims is *ispo facto* two strikes. Rather, the court in assessing the specific factor "[w]hether multiple convictions occurred *out of the same act*" found while the two strike offenses occurred in "the *same incident,* . . . it involved stabbing two different people," and "so it does count as two strikes." (Italics added.) In context, it is clear the sentencing court concluded because Leon's multiple convictions arise out of two separate acts against two separate victims, he had two strikes. We see no abuse of

13

discretion in how the court counted Leon's strike priors.  (Cf. *Shaw*, *supra*, 18 Cal.5th at p. 1099, quoting *Vargas*, *supra*, 59 Cal.4th at p. 642 ["when a defendant's 'two strikes [*are*] *based on the same act* . . . no reasonable person would disagree that [the] defendant fell outside the spirit of the Three Strikes law'—specifically, its provisions prescribing indeterminate life sentences for persons with two prior strikes."].)

Other than his contention under *Shaw*, Leon makes no other argument that the trial court abused its discretion at the time of his sentencing by denying his *Romero* motion.  We nevertheless perceive none on the record before us.

## DISPOSITION

The judgment is affirmed.

DO, Acting P. J.

WE CONCUR:

BUCHANAN, J.

KELETY, J.